## Henderson & Son, Inc., *v.* F. H. Smith Co., Appellant.

Argued April 27, 1931. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER and MAXEY, JJ.

*J. Gowen Roper,* of *Roper & Caldwell,* for appellant, cited: Gilpin v. Howell, 5 Pa. 55; Cottrell v. Warren, 18 Pa. 487.

*Ralph S. Croskey,* for appellee, cited: Megargee v. Ins. Co., 15 Phila. 226; Tuttle v. Loan Co., 6 Wharton 216; Wright v. Crane, 13 S. & R. 446; Cowles v. Cowles, 2 P. & W. 139; McNair v. Wilkins, 3 Wharton 551; Quinn v. R. R., 219 Pa. 24; Lesser v. Henry, 50 Pa. Superior Ct. 440; Bishop v. Plantation Co., 276 Pa. 101.

OPINION BY MR. JUSTICE SIMPSON, May 11, 1931:

Plaintiff brought suit to recover the amount due it for installing lighting fixtures in a large apartment house. It alleged that defendant was the actual owner and builder, though masquerading under the name of a financially worthless strawman, and that this fact could be established from defendant's own books and papers. In order to prove this, it obtained leave from the court below to take the testimony of defendant's officers in Washington, D. C., where defendant's principal office was, by depositions instead of by commission, as is the usual way. When it attempted to take the depositions, it found that all the officials of defendant who knew anything on the subject, or could produce any books or

papers, had left the city, and only those remained who professed to know nothing and could not or would not produce anything. These officers asserted, however, that a search was being made for the books and papers required, that they would be produced when found, and intimated that this would probably be within ten days, that time possibly being named because, before it arrived, the day then fixed for trial would have passed.

Being balked in thus getting the evidence desired, plaintiff was compelled to let the trial go over, and apply to the court below for a rule upon defendant, under the Act of February 27, 1798, 3 Sm. L. 303, to show cause why it should not produce the books and papers at the trial. This rule was made absolute December 2, 1929.

When the case was finally called for trial on January 13, 1931, the books and papers were not produced, nor was any reasonable excuse given why they were not. An attempt was made to explain the default by the testimony of an assistant secretary, who said they were "in the possession of the department of justice in Washington, D. C., by virtue of subpœnas issued under the direction of the Supreme Court of the District of Columbia......from May of 1929 to October of 1930." These subpœnas were not produced, but it was contradictorily testified, first that they were in the files of the defendant company, and second that they were in the possession of an absent vice-president. There was no evidence that the books and papers were being retained for future use by the department of justice, that they were needed by it in the future, that defendant tried to get them, that they could not have been had if asked for, or that any attempt had been or was being made to comply with the exigency of the rule requiring their production, though more than a year had elapsed since the rule was made absolute.

The trial judge was of opinion that defendant's attempted excuse was a mere subterfuge, and hence, as

required by the statute, directed a verdict for plaintiff, and had the damages assessed by a jury in the way pointed out in Wright v. Crane, 13 S. & R. 447, and Cowles v. Cowles, 2 P. & W. 139.

On the motion for a new trial, defendant feebly attempted to excuse its default. This was too late to be effective: McNair v. Wilkins, 3 Wh. 551, 554. Aside from this, what was done, and the court's reaction to it, are thus stated in the opinion refusing a new trial: "Defendant appeals to the discretion of the court to grant its motion for new trial by attaching to its paper book a *copy* of a subpœna issued by the Supreme Court of the District of Columbia and a *copy* of receipt dated October 8, 1930, signed by a special assistant to the attorney general, for the papers listed in the subpœna. This is not the proper way to bring these documents before us. They are not after-discovered evidence. No request for continuance or for additional time to locate them was made, and we do not feel justified in helping a defendant which, so far as the record discloses, did not help itself. However, we have examined the subpœna and note that the defendant was commanded to attend the Supreme Court of the District of Columbia to testify, and to produce certain papers therein enumerated, on October 8, 1930. That was all that was required. The subpœna did not give that court nor the attorney general possession of the papers. It does not appear that they were impounded. Nothing has been disclosed to us that would have prevented their production at the trial here. Defendant has not shown that it could not have repossessed itself of them so as to have complied with the order of this court. Apparently it has permitted the papers to remain with the attorney general, an act of grace which left them entirely within defendant's control." To this may be added that the purpose for which the department of justice desired the papers, —this excuse not even attempting to cover the books required to be produced in the court below,—was ended by

the conviction of the defendants, and hence, presumptively at least, defendant could at any time have obtained the papers.

We are clear that the judgment should be affirmed. The Act of 1798 provides that where defendants are required "to produce books or writings in their possession or power," if they "fail to comply with such order, and to produce such books or writings, or to satisfy said courts why the same is not in the party's power so to do, it shall be lawful for the said courts, if the party so refusing shall be a......defendant, to give judgment against him or her by default." Under this statute, defendant, not having produced the books and papers, was required to satisfy the court below that its failure was due to something beyond its control. It is not for us to determine that that tribunal should have been satisfied, unless it is clear beyond all reasonable doubt that its decision was erroneous. The trial judge saw the witnesses and hence is far better able than we are to determine whether or not defendant was acting in good faith: Foulk v. Hampton, 299 Pa. 272; Werner v. Hillman Coal & Coke Co., 300 Pa. 256. As was said in Cowles v. Cowles, 2 P. & W. 139, 143: "The court of common pleas, who were the judges of the whole case, were not satisfied with the answer; nor can we say there was anything wrong in this. It would be perilous for us to reverse their decision, on a mere difference of opinion, in regard to the weight of testimony; particularly when it is recollected that they had the advantage of a viva voce examination of the defendant. ...... If the defendant has been injured, it is his own fault, as it is manifest there has been a want of candor and fair dealing on his part." We may add, however, that, so far as we can judge from the record in the instant case, the court below, acting judicially, could not have done other than as it did.

The judgment of the court below is affirmed.