## Peoples City Bank, Appellant, *v.* John Hancock Mutual Life Insurance Company.

Argued September 27, 1945. Before Maxey, C. J., Drew, Linn, Stern, Patterson, Stearne and Jones, JJ.

petition to delete portion of opinion dismissed November 27, 1945.

*Elder W. Marshall,* with him *A. M. Simon* and *Reed, Smith, Shaw & McClay,* for appellant.

*George Y. Meyer,* for appellee.

Opinion by Mr. Justice Linn, October 30, 1945:

The John Hancock Mutual Life Insurance Company, a corporation of Massachusetts, brought an action of assumpsit in the Common Pleas of Allegheny County against the Peoples City Bank, which has its place of business in McKeesport, in that county. The insurance company averred that the bank, its depositary, had

wrongfully charged its account with certain checks, totaling $65,856.57, drawn by it to the order of various payees; that the checks "were cashed" by the bank on forged endorsements of the named payees.

The bank, in its affidavit of defense, averred that the checks were paid to other banks through the Mc-Keesport Clearing House, Pittsburgh Clearing House or the Federal Reserve Bank. It averred that if, as the insurance company claims, the endorsements were forged, the insurance company "failed to act promptly in notifying the defendant of such forgeries and demanding payment by reason thereof, in that although the plaintiff knew or from sources of information readily accessible to it should have known during the year 1941 the facts upon which it now bases its claim that said endorsements were forged, it failed to notify the defendant of the forgeries and to demand reimbursement by it by reason thereof until the following respective dates: March 6, 1942, with respect to 22 of said checks; March 17, 1942, with respect to 51 of said checks; April 2, 1942, with respect to 19 of said checks; and April 10, 1942, with respect to 8 of said checks." The bank also averred that the insurance company was negligent in failing to discover the forgeries within a reasonable time. It averred that it had been informed by the plaintiff insurance company that specified checks "were drawn by it in favor of named payees who appear to it to be fictitious and non-existent persons"; that the checks, if drawn to fictitious payees, were put in circulation by the insurance company and that the bank was not now liable to pay the amount of the checks. The bank also averred that on the dates when it charged plaintiff's account the "plaintiff held a policy of insurance issued by Employers' Liability Assurance Corporation, Ltd., by the terms whereof the plaintiff and also the defendant as a depository of the plaintiff were insured against loss by reason of forgery of the names of the payees of checks drawn by the plaintiff on the

defendant bank as its depository." The bank averred
that, prior to suit, the Employers' Liability Assurance
Corporation, Ltd., paid to the plaintiff the amount of
all the checks listed in the statement of claim.

In its averments of New Matter, extending over many
pages of the record, the bank alleged that the forgeries
resulted from the misdemeanors of Arthur J. Perlow and
Harry L. Creditor, who were employed by the insur-
ance company as assistant managers in its McKeesport
office; that these assistant managers had caused policies
to be issued on non-existent persons in favor of non-
existent beneficiaries, had paid premiums thereon, had
presented fraudulent proofs of death and had made
fraudulent claims for cash surrender values; that at
various times prior to January 21, 1942, the insurance
company knew of the criminal conduct of these em-
ployes but failed to give prompt notice of the forgeries.

In its reply to New Matter, the insurance company
admitted that its contract of insurance with the Em-
ployers' Liability Assurance Corporation protected the
bank, plaintiff's depositary, against these forgeries but
denied that "the loss of the plaintiff . . . was fully paid
to it by its insurance carrier" and averred that "it has
not recovered . . . any part thereof . . ."

With that brief statement of the record in the insur-
ance company's suit against the bank, we now consider
the present appeal in the bank's suit in equity against
the insurance company, which is here for review. The
bank filed a bill for discovery setting forth the plead-
ings in the suit at law. The proceeding for discovery
is ancillary to the action at law and is a step in the
trial of that action. The bill states that the earliest of
the checks upon which the insurance company seeks to
recover is dated January 16, 1935, and the last, March
25, 1941. It alleges that during all the period covered
by the transactions involved, it had been the bank's
practice "to balance plaintiff's deposit account on Fri-
day of each week, and on the same day to return to plain-

tiff by mail, at its home office at Boston Massachusetts, all of plaintiff's cancelled checks paid by the defendant and charged to plaintiff's deposit account during the preceeding seven-day period. Each of the checks listed in Exhibit 'A' to the statement of claim was returned by mail to the plaintiff by the defendant on the Friday following the date on which such check was charged to plaintiff's deposit account."

The bank averred that in the fall of 1941 the insurance company learned of forged endorsements and fraudulent acts of its McKeesport employes, with respect to transactions now involved, and that it did not notify the bank promptly when it knew or should have known of the facts; that the evidence to prove that the insurance company knew of the payments on the forged endorsements long before it notified the bank on March 6, 1942, is in the exclusive possession of the insurance company and that the bank cannot obtain evidence of those facts anywhere else.

To this bill, the insurance company filed preliminary objections which were sustained on the ground that there was a full, complete and adequate remedy at law. This remedy, the learned court held, was pre-trial conference: Rule 212, 332 Pa. xlviii. We cannot agree that pre-trial conference supplies a full, complete and adequate remedy ousting the power of equity to order discovery. The Act of June 16, 1836, P. L. 784, section 13, as amended, 17 PS sections 282, 283, confers upon the courts of common pleas "The power and jurisdiction of courts of chancery, so far as relates to: . . . III. The discovery of facts material to a just determination of issues, and other questions arising or depending in the said courts." The subject was considered in *Yorkshire Worsted Mills v. National Trans. Co.*, 325 Pa. 427, 190 A. 897, in which the scope of relief was thus stated (omitting references to cases) : "Although equity has plenary jurisdiction to afford the relief which appellant seeks, there is a fundamental limitation upon the character of information

which may be so obtained. The purpose of the discovery is to enable the party seeking it to make out his cause of action or his defense, not to pry into the case of his opponent and to anticipate it . . . The matters about which inquiry is made must bear pertinently upon the matters which he will be required to prove affirmatively at trial . . ."

The application of the rule is illustrated by many cases. In *Sherwood Brothers v. Yellow Cab Co.*, 283 Pa. 488, 129 A. 563, an action for breach of contract to purchase from plaintiff all the motor fuel to be consumed by defendant between certain dates, the plaintiff prayed discovery of the extent of defendant's purchases of fuel between the specified dates. The court below dismissed the bill on the ground that plaintiff was entitled only to nominal damages and therefore did not require discovery; we reversed, holding that the information asked for "is most 'material', for otherwise it [plaintiff] can neither properly prepare its statement of claim, nor successfully prove its case at the trial." That case was cited with approval by Mr. Justice CARDOZO, in *Sinclair Rfg. Co. v. Jenkins Co.*, 289 U. S. 689, in considering a similar bill. In the *Sinclair* case, discovery was "demanded as to the number of cracking stills constructed by the defendant under the Isom patent; as to the extent and time of operation; and as to the amount of gasoline and other petroleum products yielded thereby, with an inspection of the relevant designs and drawings." The opinion stated: "The law of discovery has been invested at times with unnecessary mystery. There are few fields where considerations of practical convenience should play a larger role. The rationale of the remedy, when used as an auxiliary process in aid of trials at law, is simplicity itself. At times, cases will not be proved, or will be proved clumsily or wastefully, if the litigant is not permitted to gather his evidence in advance. When this necessity is made out with reasonable certainty, a bill in equity is maintainable to give him what he needs.

Equity Rule 58." At page 696 the opinion continues: "To hold that the plaintiff in an action at law may have discovery of damages is not to say that the remedy will be granted as of course, or that protection will not be given to his adversary against impertinent intrusion. . . . The court may decline to open the defendant's records to the scrutiny of a competitor posing as a suitor, if the suit has been begun without probable cause or as an instrument of malice. It is all a matter of discretion. Good faith and probable cause were here abundantly established."

In *Compton v. International Harvester Co.*, 297 Pa. 462, 147 A. 93, we affirmed a decree of discovery for the benefit of a plaintiff trustee in bankruptcy. He desired to file a statement in trespass against the defendant "because of the removal by the latter of certain personal property owned by the bankrupt from the bankrupt's stores without consent," and averred that he was without knowledge "of the exact amount, nature and kind of the property removed, and [had] no way of obtaining this knowledge except from the books or agents of the defendant." In *Lesser v. Henry*, 50 Pa. Superior Ct. 440, it appeared that plaintiff had agreed to solicit insurance for the defendant for a stipulated salary and a portion of premiums on policies and renewals and a bonus in case defendant discontinued the contract. Defendant discontinued the agency and plaintiff sued in assumpsit. He was unable to prepare his statement of claim without first seeing defendant's records to ascertain the amount due him; these records defendant refused to furnish. The court decreed discovery of "all and every policy or policies of insurance in force on February 28, 1910, written on the order of the plaintiff for a period of 2½ years immediately prior to said date, including renewals in force on said date." See also *Bains v. Goldey*, 35 Pa. 51; *Dock v. Dock*, 180 Pa. 14, 36 A. 411. Pomeroy, Equity Jurisprudence (5th ed.)

section 198, states "either the plaintiff or the defendant [1] in the pending or anticipated action at law may file a bill for a discovery . . ."

The Act of 1836, quoted above, provides for discovery of facts material to a just determination of issues, and is available to either or both parties; either is entitled to discovery of such material facts as relate to his own case, but not to a discovery of the evidence by which his adversary hopes to prove his case.

In *Whetsel v. Shaw*, 343 Pa. 182, 22 A. 2d 751, it was held that the remedy afforded by the Act of February 27, 1798, 3 Sm. L. 303, 28 PS section 61, is not available for the production of documents prior to trial; the inadequacy of that remedy may be illustrated by *Henderson v. Smith Co.*, 304 Pa. 97, 155 A. 430. Process by subpoena duces tecum is inadequate for the bank's purposes for the same reason and also because the insurance company's home office is not in this state. While the rules for pre-trial conference provide a method of simplifying issues, and controlling trial procedure, there is nothing to indicate that they were intended to displace the bill of discovery; they do not provide for the compulsory disclosure of evidence by the opposing party under oath—one of the essentials of discovery. "A bill of discovery in aid of an action at law is favored in equity, and will be allowed if a more convenient remedy,

---

[1] *Bidder v. Bridges*, L. R., 29 Ch. D. 29, contains an interesting discussion of discovery sought by a defendant from the plaintiff after the action was at issue; plaintiff was required to answer part of the interrogatories. *Shirk v. Lancaster City*, 313 Pa. 158, 169 A. 557, involved the reasonableness of water rates charged the defendant municipality. We said that the defendant must submit its records to the plaintiff. At page 170, the opinion states: "The court, however, may require the city to furnish to complainants' engineers, a complete inventory of plant equipment, water mains, where the same is situated or located, its cost and all items entering into value. Taxpayers having an interest, similar in this regard to shareholders, may compel such disclosures where the charge is, as here, mismanagement."

even though there be a similar process at law :" *Compton v. International Harvester Co.,* 297 Pa. 462, 147 A. 93.

The bank denies liability on the ground that the insurance company did not give prompt notice of the forgeries. That is a good defense (*McNeely Co. v. Bank of North America,* 221 Pa. 588, 70 A. 891) but the bank has the burden of proof. It avers that the insurance company's assistant managers, Perlow and Creditor, had been engaged in these forgeries from as early as 1935 and that the insurance company, by its investigations and those of the United States Postal Authorities, of which it was advised, knew or should have known of the forgeries long before it gave notice to the bank.

The bank specifies eleven particulars for relief. Two paragraphs are as follows: "9. That defendant disclose to plaintiff the exact date on which it first learned that each of the said checks upon which it brought said action in assumpsit at No. 3052 April Term, 1943, as aforesaid, against this plaintiff, was cashed on a forged endorsement, and that this information be supplied as to each of said checks.

"10. That defendant disclose to plaintiff and specify the exact date on which it first learned that any of said checks on which it brought suit as aforesaid were issued to fictitious payees and cashed by or through the actions of either said Arthur J. Perlow or Harry L. Creditor and that this information be supplied as to each of such checks."

The bank is clearly entitled to receive that information from the insurance company which alone knows when it first learned or should have learned of the forgeries of each check; it is a fact which the bank must prove in defense; the information is therefore directly "material to a just determination of the issues" made by the statement of claim and the affidavit of defense.

As the record now stands, we must consider as a fact in the case that the insurance company and the bank are both protected against loss from these forgeries by the

insurance policy issued to the John Hancock Insurance Company by the Employers' Liability Assurance Corporation, Limited.

The chancellor has a wide field of discretionary action (see *Sinclair Rfg. Co. v. Jenkins Co.*, 289 U. S. 689) in determining the extent to which discovery [2] from a defendant's records will be ordered. The insurance company's reluctance to exhibit its records to enable the bank to prove want of prompt notice, is therefore not based on harm or disadvantage to the insurance company; its refusal is not in its own interest but to assist its indemnitor to avoid its obligation to the bank. With nothing to lose, it seeks to deprive the bank of the indemnity which, by its pleadings, it admits the bank is

---

[2] Sunderland, *Scope and Method of Discovery Before Trial*, 42 Yale Law Journal, 863, 871-872, says: "Courts have found no difficulty in dealing with unrestricted discovery, and have expressed satisfaction with its results. 'There is no objection that I know why each party should not know the other's case,' said Judge TAFT, afterwards Chief Justice of the Supreme Court of the United States, sitting as a state judge in Ohio.

"When the objection was urged before the Supreme Court of Kansas, that unrestricted discovery would permit one to go on a 'fishing expedition' to ascertain his adversary's testimony, the court answered, through Justice DAVID BREWER, afterwards a Justice of the Supreme Court of the United States—'This is an equal right of both parties, and justice will not be apt to suffer if each party knows fully beforehand his adversary's testimony.'. The Supreme Court of Missouri declared that it was 'a very wise provision of the code of procedure . . . [which permitted] . . . a party . . . to search the conscience of his adversary' by means of discovery before trial. . . .

"Judge WOOLSEY, in the United States District Court for the Southern District of New York, criticizing the federal practice as to discovery, said: 'In view of several illuminating experiences which I have had in cases pending in the English courts, I feel hospitable to every form of interlocutory discovery. . . . The rationale of this attitude is, of course, not only that the court wants to know the truth, but also that it is good for both parties to learn the truth far enough ahead of the trial not only to enable them to prepare for trial, but also to enable them to decide whether or not it may be futile to proceed to trial.' "

entitled to. Equity will not tolerate that. In such circumstances, discretion will resolve all doubts against the defendant who withholds records.

The first of the prayers for relief asked for examination of the correspondence between the McKeesport and the home offices concerning instructions to its District Manager, "as to the said Arthur J. Perlow and Harry L. Creditor, in so far as said forged endorsements of checks are concerned . . ." We think the bank is entitled to see that correspondence; it is material in determining the time of the insurance company's knowledge.

Paragraph 2 desires the correspondence "asking for or relating to an investigation of the McKeesport . . . office of defendant, and the affairs and dealings of said Arthur J. Perlow and Harry L. Creditor, in so far as said forged endorsements of checks are concerned." We think the bank is entitled to that information as bearing on the time at which knowledge was, or should have been, acquired.

Paragraphs 3 and 4 asked for the correspondence relating to the demotion of Perlow and Creditor from their positions as assistant managers; that request is too general; its materiality does not appear; the request should be refused.

Paragraph 5 asks for an examination of the Death Claim Register, which the insurance company maintained in its McKeesport office. The bank avers that when checks for death claims were received by the McKeesport office from the home office, they were entered in this book, which would show the name of the Assistant District Manager in charge of the claims and what became of the checks. The insurance company admits that the book would show what became of the checks. In view of the averments of the forgeries by the two Assistant Managers and the maintenance of the Death Claim Register showing what became of the checks on which the suit is based, this record is material to a determination of the issues and should be submitted for examination as to each of the checks in suit.

Paragraph 6 asks for "all of the correspondence between Robert J. Wright and his superior officers as to the forgeries, peculations and other fraudulent acts of said Arthur J. Perlow and Harry L. Creditor, either in the McKeesport, Pennsylvania, office or in any other office of defendant." That request is too general and should be refused.

Paragraph 7 asks for "all of the correspondence between the home office of the defendant and its insurance carrier, Employers' Liability Assurance Corporation, . . . bearing on the question of said forged endorsements, and particularly, agreements between the Employers' Liability Assurance Corporation and the defendant as to any loss sustained by defendant as the result of the forgeries and other fraudulent acts of either and both the said Arthur J. Perlow and Harry L. Creditor." As the insurance company denies that the Employers' Liability has paid the loss, we think an order requiring the production of this correspondence before trial should not be made on this record.

Paragraph 8 asks for the "reports of the investigators employed by the defendant to investigate the affairs of its McKeesport, Pennsylvania, office, which resulted in the disclosure that the said Arthur J. Perlow and Harry L. Creditor had been guilty of making false and fraudulent claims and obtaining the money on the checks for which defendant is seeking to recover from the plaintiff." That is too general to support an order for plaintiff; the requirements of the case will be satisfied by the production of the papers heretofore ordered to be produced. Paragraphs 9 and 10 were considered earlier in this opinion. Paragraph 11 is too general. We have considered all the preliminary objections but can find no ground for sustaining any.

Decree reversed; bill reinstated; record remitted for further proceedings not inconsistent with this opinion; costs to abide the result.