Reed v. The Farmers National Bank of
Watsontown et al.

592

*Carl Rice,* for complainant.

*M. Luther Harter, Samuel Gubin,* and *Herbert W. Cummings,* for respondents.

TROUTMAN, J., June 29, 1948.—Plaintiff, Howard Reed, filed a bill in equity for discovery in aid of pleadings in behalf of himself and all plaintiffs in actions at law now pending in the Court of Common Pleas of Northumberland County to nos. 86 to 106, inclusive, and 162 and 163, February term, 1946, alleging that all of said actions arise out of actions, matters and things therein complained of, or to be complained of, and in which the interests, insofar as the purposes of the bill are concerned, are common and identical and constitute sufficient grounds for uniting the causes of action. All of the said suits are actions in trespass.

The bill avers that plaintiff and all members of the class represented by him are owners of certain bonds issued by the Montgomery-Clinton School Association, or purported to be issued by it, all of which bonds were authenticated, or purported to be authenticated, by defendant in its capacity as trustee, and that defendant, as trustee for bondholders under the mortgage of Montgomery-Clinton School Association, paid all of the coupons due or purporting to be due to the various holders thereof, without question upon presentation, until January 1, 1944, upon which date, when coupons were presented by plaintiff and other plaintiffs, they were dishonored by defendant because, as informed by defendant, the coupons were not valid obligations of the said association and not entitled to payment.

It is averred that plaintiff, Howard Reed, is the owner of bonds of the face value of $17,000, and the approximate face value of the bonds owned by the other members of the class represented by plaintiff is $90,000; and all of the said bonds are coupon bonds negotiable in form, with both the instrument and the coupons attached thereto, payable to bearer on the several dates thereof.

The bill further avers, upon information and belief, that defendant in its capacity as trustee and in its proper corporate person through its officers knew, had known, and in the exercise of due care should have known and was on notice in both capacities that the bonds and coupons held by plaintiff and other plaintiffs were not valid obligations of the said association and neglected to inform plaintiff and those represented by him, from taking proper steps to protect themselves, but on the contrary, defendant actively concealed the facts so set forth and conspired and cooperated with others to conceal said facts and failed to disclose facts coming to its knowledge in such a way as to be bound by such knowledge in both of its capacities, which, plaintiff alleges, may constitute felonies by other persons which defendant herein not only failed to disclose, but may have condoned, concealed and compounded and in so doing, said defendant was guilty of negligence, fraud and breach of trust, whereby plaintiff and those whom he represents herein were damaged.

The bill further avers that plaintiff and those whom he represents are unable to prepare and file a complete and precise statement of their causes of action in the suits which they have instituted against defendants herein, because they do not know the various numbers of the various bonds which were truly authenticated; the various times of presentation and payment of the various coupons, and which of them were coupons appurtenant to valid obligations and which were appurtenant to obligations of said Montgomery-Clinton

School Association which are alleged to be invalid; the times when defendants knew, or should have known, of the alleged defects of said obligations, and other like matters, all of which facts are exclusively within the knowledge of defendants, because defendants kept, as part of their corporate duties under the trust indenture issued in connection with the issue of the said bonds, all records of authentication, redemptions, interest payments, and other like matters.

The bill prays the court to make an order upon defendant requiring it to produce for inspection by plaintiff, his agents and attorneys, at such time and place and under such circumstances and conditions as the court shall decree all bonds, coupons, files, day books, journals, ledgers, correspondence, deposit slips, or duplicates thereof, resolutions, or copies thereof, all records of authentication, redemptions, interest payments, and other like matters in defendant's possession, under its control, or known to it concerning, any and all bonds or coupons of said Montgomery-Clinton School Association, whether issued or unissued, valid, or alleged to be invalid, authenticated or unauthenticated, redeemed or canceled, or cremated, or unredeemed or outstanding, in which the Montgomery-Clinton School Association is or purports to be the obligor.

An answer was filed by defendants in which the averments of the various paragraphs of plaintiff's bill in equity are denied and prays that the bill for discovery be dismissed. The answer avers that the mortgage under which defendants are alleged to be trustee for the bondholders is recorded and such mortgage, to which plaintiff has access, sets forth the numbers and kinds of bonds authorized to be issued and the manner in which they are to be executed and authenticated, all of which information is available to plaintiff. For further answer, defendants deny that under the trust indenture issued in connection with

the issuance of said bonds it was the duty of defendant trustee to keep a record of authentications, redemptions, interest payments and other like matters, and on the contrary, aver that it was the duty of the association to execute and deliver to the trustee all bonds authorized and that it then became the duty of the trustee to certify and return all bonds to the association and that when the bonds in the aggregate sum of $200,000 as authorized in said mortgage were issued and executed by the proper officers of the said association and delivered to the trustee, they were all authenticated by a certificate endorsed thereon by the trustee and all of said bonds were returned to the association as provided in said mortgage and the trustee secured from said association a proper receipt therefor, dated April 16, 1929. Defendants deny that they were obliged to keep a record of authentications, redemptions or interest payments under the terms of said mortgage.

Defendants, for further answer, aver that the prayer of plaintiff's bill must be denied for the reason that the subject matter of the facts sought to be inquired into are not stated with sufficient precision to disclose any materiality to the determination of the issue at law and the particular bonds, coupons, files and other papers and documents desired are not designated and the court is without power to make an order to direct defendants to allow plaintiff to examine all bonds, coupons, files, etc., in defendant's possession, regardless, whether the papers desired to be examined are material and pertinent.

From the testimony taken in support of plaintiff's bill and defendants' answer, the chancellor makes the following:

*Findings of fact*

1. Plaintiff, Howard Reed, is a resident of the Borough of Hughesville, Lycoming County, Pa.

2. Defendant, Farmers National Bank of Watsontown, Pennsylvania, is a National bank corporation.

3. Defendant, Farmers National Bank of Watsontown, Pa., is the trustee for bondholders under the mortgage of Montgomery-Clinton School Association, of Montgomery, Pa., dated April 10, 1929, and recorded in the office for the Recorder of Deeds for the County of Lycoming, Pa., in mortgage book 121, pages 149 to 158, inclusive.

4. Plaintiff Howard Reed and plaintiffs whom he represents are plaintiffs in actions at law now pending in the Court of Common Pleas of Northumberland County, Pa., to nos. 86 to 106, both inclusive, February term, 1946, and nos. 162 and 163, February term, 1946, and in which defendants herein are named as defendants.

5. Plaintiff, Howard Reed, is the owner of bonds of the face value of $18,000 issued or purported to be issued under the provisions of the mortgage of the Montgomery-Clinton School Association to defendant, The Farmers National Bank of Watsontown, Pa., as trustee, and the approximate face value of the bonds owned by the other members of the class, represented by plaintiff, is $90,000.

6. Said bonds are coupon bonds negotiable in form, with both the instrument and coupons attached thereto, payable to bearer on the several dates thereof.

7. All of the bonds authorized to be issued under the terms of the said trust mortgage were delivered by the Montgomery-Clinton School Association to defendant trustee which caused the trust certificate thereon contained to be executed by its trust officer and were delivered to the said association and a receipt obtained therefor.

8. Defendant trustee paid all of the coupons due, or purported to be due, to the various holders thereof without question on the various due dates thereof upon presentation, until January 1, 1944.

9. In February 1944 plaintiff Howard Reed, together with several other bondholders whom he represents in this bill, were informed by the cashier and trust officer of defendant trustee, that all of the bonds held by said plaintiffs were not valid obligations of the Montgomery-Clinton School Association and not entitled to payment except bond numbered M-48, held by plaintiff Howard Reed.

10. The said Fairchilds, trust officer of said defendant trustee, informed said plaintiff Howard Reed and several other bondholders on February 14, 1944, that all bonds bearing numbers above M-115, were spurious or forged bonds.

11. The coupons on said bonds held by plaintiff, due July 1, 1944, were dishonored by defendant trustee and coupons have been subsequently dishonored at each interest paying date.

12. Under the provisions of the trust indenture, all of the records of authentication, which plaintiff seeks, were to be kept by the school association and the only duty placed upon defendant trustee in relation to the issuance of the bonds was to certify them upon presentation by the Montgomery-Clinton School Association and then return the same to the association.

13. There is no evidence designating the bonds, coupons, files, day books, journals, ledgers, correspondence, etc., which plaintiff requests the court to direct defendant to permit him to examine.

14. Plaintiff does not describe the desired documents with precision nor has he shown that they are material and pertinent and in the possession or control of defendant.

15. There is no evidence to indicate that the records, which plaintiff requests the court to direct defendant to permit him to examine, are in existence and that the information they contain cannot be obtained from other sources.

## Discussion

Plaintiff seeks discovery in aid of pleadings in behalf of himself and all plaintiffs in actions in trespass now pending in the Court of Common Pleas of Northumberland County. He, together with other members of the class represented by him, are the owners of bonds issued or purported to be issued by the Montgomery-Clinton School Association in the approximate face value of $90,000. There is printed on each of the bonds a trustee's certificate and each bond is purported to be signed by the trust officer of defendant, Farmers National Bank of Watsontown. All of the coupons attached to the said bonds were paid upon presentation to the trustee until January 1, 1944, and, thereafter, it was learned by plaintiff Howard Reed that there was some question as to the validity of the bonds and as a result thereof, he together with several other bondholders who are represented by him in this action, conferred with George Fairchilds, cashier and trust officer of defendant bank, on February 14, 1944, in respect to the bonds held by them and was informed by Mr. Fairchilds that any bonds bearing numbers above M-115 were spurious or forged bonds. When the coupons due July 1, 1944, were presented for payment, payment was refused on all coupons attached to 17 bonds held by plaintiff Howard Reed. The evidence shows that Howard Reed was the holder of 18 bonds in the denomination of $1,000 each and the only bond held by him whose coupon was honored and paid was bond no. M-48. When he was called as a witness, he gave the number of each bond held by him together with the dates of purchase of the same, testifying that all of the bonds were purchased of L. A. Henderson, secretary-treasurer of the Montgomery-Clinton School Association. The other witnesses called in behalf of plaintiff stated that payment was refused on all coupons attached to the bonds held by them. These

holders testified that they knew the numbers of their bonds, had the bonds in their possession and that they knew or could determine the dates when the bonds were . purchased by them of L. A. Henderson. The only testimony concerning any records that the trustee may have concerning the bonds was given by Earl D. Buck, who stated that Mr. Fairchilds, the cashier of defendant bank referred to a loose-leaf record sheet about 18 inches long and about 12 inches wide, when Mr. Buck had called at the bank for information concerning the bonds. The mortgage given by the school association under which the bonds were issued was offered in evidence by plaintiff and is recorded in the office of the Recorder of Deeds for Lycoming County, Pa. Article 1(a) provides that upon the execution and recording of the mortgage the association shall execute and deliver to the trustee all of the bonds authorized to be issued thereunder, in various denominations, aggregating at par $200,000 and that the trustee should thereupon certify and return to the association all of the said bonds, with all the coupons thereto belonging. Defendants in their answer aver that in accordance with this provision of the mortgage, bonds in the aggregate sum of $200,000, as authorized in said mortgage, were delivered to defendant trustee and were all authenticated by a certificate endorsed thereon by defendant trustee, which, in turn, returned all of said bonds to the association as provided in the mortgage and secured from said association a proper receipt dated April 16, 1929. Defendants offered no testimony upon the hearing and at the close of plaintiff's case, made a motion to dismiss the bill.

Discovery in aid of an action at law is a well-recognized ground of equitable jurisdiction in this Commonwealth: Yorkshire Worsted Mills v. National Transit Co., 325 Pa. 427, 428 (1937) ; Compton, Trustee, v. International Harvester Co. of America, 297 Pa. 462, 468 (1929) ; Liegey, Trustee, v. Clearfield Textile Co.,

149 Pa. Superior Ct. 433 (1942); Lesser v. Henry, 50 Pa. Superior Ct. 440, 442 (1912).

The jurisdiction in discovery was given to the Court of Common Pleas of Philadelphia County by the Acts of June 16, 1836, P. L. 784, sec. 13, 17 PS §282 and April 10, 1848, P. L. 448, sec. 4, 17 PS §308, and was conferred generally upon the courts of common pleas throughout the State by the Act of February 14, 1857, P. L. 39, sec. 1, 17 PS §283.

It is available in actions of trespass and may be invoked by either plaintiff or defendant. See Bains v. Goldey, 35 Pa. 51. Discovery as an ancillary remedy is a favored jurisdiction of equity and the right will always be enforced unless some recognized and well-established objection exists in the particular case to prevent or limit its operation: Liegey, Trustee, v. Clearfield Textile Co., supra, p. 437; Peoples City Bank v. John Hancock Mutual Life Insurance Co., 353 Pa. 123.

It is well settled that the discovery sought must be incidental to some relief which a court has the right to grant; plaintiff must show by his averments, at least in a prima facie manner, that he has a good cause of action incidental to which he seeks recovery: Elk Brewing Co. v. Neubert, 213 Pa. 171, 176. A bill of discovery for the purpose of obtaining evidence in aid of a legal right does not draw the whole case into equity; the jurisdiction is for discovery only. But even where there may be strong doubts about the materiality of the facts stated and inquired about, it is the rule of a court of equity to require them to be disclosed, leaving it to the court of law to consider and decide the question. Facts are material which tend to establish any of the issues raised, although each of them may be but weak links in the chain of proof leading up to the recovery sought: Sherwood Brothers, Inc., v. Yellow Cab Co., 283 Pa. 488.

Plaintiff sets forth the basis of his actions in trespass in the fifth paragraph of his bill which avers, in substance, that the trustee was negligent in not informing plaintiff as to the validity of his bonds after it had known that the bonds and coupons held by plaintiff were not valid obligations of the Montgomery-Clinton School Association, and thereby prevented plaintiff from taking steps to protect himself and that the trustee actively concealed the facts concerning the validity of the obligations and conspired and coöperated with others to conceal said facts and failed to disclose facts coming to its knowledge in such a way as to be bound by such knowledge in its capacities as trustee and as a National Banking Corporation. It is further averred that said defendants were guilty of negligence, fraud and breach of trust, in so doing, and as a result thereof plaintiff and those whom he represents in the bill for discovery were damaged.

While a court of equity has no jurisdiction to pass upon the merits of a cause of action, yet, from the above averments, at least in a prima facie manner, plaintiff indicates a good cause of action incidental to which he seeks discovery.

The discovery which plaintiff seeks is embodied in the prayer of plaintiff's bill. He prays that this court make an order upon defendant requiring it to produce for inspection by plaintiff, his agents and attorneys, at such time and place and under such circumstances and conditions as the court shall decree, all bonds, coupons, files, day books, journals, ledgers, correspondence, deposit slips, or duplicates thereof, resolutions, or copies thereof, all records of authentication, redemptions, interest payments, and other like matters in defendant's possession, under its control, or known to it, concerning any and all bonds or coupons of said Montgomery-Clinton School Association, whether issued or unissued, valid, or alleged to be invalid, authenticated or unauthenticated, redeemed or canceled,

or cremated, or unredeemed or outstanding, in which the Montgomery-Clinton School Association is or purports to be the obligor.

The sole grounds set up in plaintiff's bill is that he and those bondholders he represents are unable to prepare and file a complete and precise statement of their causes of action in the suits which they have instituted against defendants: (1) Because they do not know the various numbers of the various bonds which were truly authenticated; (2) they do not know the various times of presentation and payment of the various coupons, and which of them were coupons appurtenant to valid obligations and which were appurtenant to obligations of said Montgomery-Clinton School Association which are alleged to be invalid; (3) the times when defendants knew or should have known of the alleged defects in said obligations, and other like matters, all of which are facts exclusively within the knowledge of defendants, because defendants kept as part of their corporate duties under the trust indenture issued in connection with the issuance of said bonds, all records of authentication, redemptions, interest payments, and other like matters.

A bill of discovery in aid of actions at law is an equitable remedy to enable a litigant to obtain, prior to trial, such information as is in the exclusive possession of the adverse party and is necessary to the establishment of complainant's case: Yorkshire Worsted Mills v. National Transit Co., supra.

The first question raised in this case is whether the information which plaintiff seeks is in the exclusive possession of defendant and is material and necessary to enable plaintiff to prepare his complaint and establish his case. Plaintiff Howard Reed testified that he purchased two bonds on May 21, 1935, one of which, no. M-48, is recognized as a valid bond. He continued to purchase bonds on various dates until December 2,

1942. All of the bonds, except the bond numbered M-48, were said to be spurious or forged bonds by the cashier of defendant trustee. From 1935 until January 1, 1944, according to Mr. Reed's own testimony, all of the coupons were honored and paid. In February 1944, hearing that there was some question as to the validity of his bonds, he conferred with the trust officer of defendant trustee and was told that the bonds were invalid obligations of the association. All of the testimony clearly shows that plaintiffs are in possession of all of their bonds; that they know the numbers thereof; that they know of whom they bought them and the amount they paid for each of them; that the coupons were payable the first of January and the first of July; the times when they presented their coupons and received payment; that they were told in February 1944 that their bonds were invalid and that the coupons from said bonds were dishonored by defendant trustee on July 1, 1944, which action informed them which of their bonds were valid and which were not. The testimony further shows that all of the bonds contained a trustee's certificate, authenticating the said bonds. There is some testimony to indicate that the trust officer of defendant trustee had for a period of four or five years some information that the bonds were invalid and further that Henderson, the secretary-treasurer of the association, furnished the money when there were insufficient funds in the bank to pay the coupons. The testimony of the witness, Earl D. Buck, shows that when he purchased bonds for the Muncy Historical Society, he inquired of Mr. Fairchilds, the cashier, concerning their validity and that after Mr. Fairchilds examined the bonds in detail he was told by Mr. Fairchilds that the bonds were good. These bonds were bought on August 6, 1942. The foregoing testimony indicates that defendant trustee had information concerning the alleged invalidity of the bonds for sometime prior to their dishonor.

A careful review of all of the testimony convinces the court that the information which plaintiff seeks is not in the exclusive possession of defendants but, rather, all the information material to the cause of plaintiff is already known by him and those whom he represents. In relation to the records of authentication, redemptions, interest payments and other like matters, which, plaintiff avers, are exclusively within the knowledge of defendants, plaintiff offered in evidence the trust mortgage and failed to show in any respect wherein the trust indenture obligated defendants to keep such records or that defendant, in fact, would keep such records. The only duty cast upon defendant trustee in respect to such records is contained in article 1(a), which has been previously mentioned, in that upon the delivery of bonds as provided for in the mortgage indenture, it was the duty of the trustee to sign a certificate authenticating said bonds and then return the same to the association. In defendant's answer, it is specifically averred that the bonds as provided in the trust indenture were duly authenticated by the trustee and were then returned to the association from which defendant trustee secured a receipt for the same. It would seem that the records of the Montgomery-Clinton School Association would show the various transactions in relation to authentications, redemptions, interest payments and like matters.

It is a well settled principle applicable to bills of discovery that such a bill cannot be maintained to discover matters whereof complainant has the same means of information as defendant: Meltzer v. Kushin et al., 342 Pa. 84, 86; Fenerty v. Duffin et al., 347 Pa. 497, 499.

Another fatal defect to plaintiff's right to a discovery is the fact that plaintiff does not describe the desired documents and records with precision nor has he shown that the records and documents desired are in the possession or control of defendants. Neither

the bill nor the prayer thereof designates the bonds, coupons, files, day books, journals, ledgers, correspondence, etc., which plaintiff requests the court to direct defendant to permit him to examine, but asks the court to make an order to direct defendant to permit plaintiff to examine all bonds, coupons, files, etc., in defendant's possession, regardless of whether the papers desired to be examined are material and pertinent.

There is no evidence in the record which would indicate that defendant has any books or records as requested by plaintiff. At least, plaintiff makes no attempt to designate to the court any particular records which might be material or pertinent to his case. In the absence of testimony as to what records might be in the possession of defendant, for the court to permit such an examination would be permitting, in effect, a discovery for the purposes of casting about for possible helpful information. For the court to grant the request of plaintiff under the present state of the record would be permitting plaintiff to pry into the case of his opponent and to anticipate any possible defenses defendant might have.

In Tomlinson Co., Inc., v. Tatlow, 19 D. & C. 398, the court held that:

In order to entitle a party to an order on his opponent for the production of documents alleged to be necessary for the preparation of a pleading, petitioner must describe the desired documents with precision, show that they are material and pertinent and in the possession or control of the other party, and that the information they contain cannot be obtained from other sources.

At page 400 the court points out:

"A mere statement that an examination of writings is material and necessary is not sufficient, because it is nothing more than a statement of the applicant's opinion."

While discovery as an ancillary remedy is a favored jurisdiction of equity, the remedy is not granted as

of course and defendant is entitled to protection against impertinent intrusion. The court will not lend its aid to a mere fishing expedition. The subject matter of the facts sought to be inquired into should be stated with sufficient precision to disclose the materiality to the determination of the issue at law, and the particular papers, books, etc., desired, designated: Humphreville v. Merchant's Equity Corp., 13 Lehigh 258.

In Young, Admr., v. Bradford County Telephone Co., 346 Pa. 90, an order was entered under Equity Rule 35 requiring defendant "to permit plaintiff's counsel to examine at its office where the books, inventories, records and papers are kept so much of the same as will enable the plaintiff to properly amend his bill by giving a more accurate and definite description of the particular books, records, inventories and papers sought by the bill for discovery," and the Supreme Court held that such an order was too general to be allowed and at the same time too indefinite to be enforced.

At the argument of the case, plaintiff's counsel confined his argument to the right of discovery in general and left the extent to which discovery should be allowed to be determined by the court upon presentation of plaintiff's interrogatories to defendants. We submit that proper practice would have been to attach interrogatories to the bill for discovery. The court can only base its decision on plaintiff's bill, defendant's answer and the testimony taken thereon. It is fundamental to plaintiff's right to recover to describe the desired records with precision, to show that they are material and pertinent and in the possession or control of the other party and that the information such records contain cannot be obtained from other sources. We are of the opinion that plaintiff has not met these fundamental requirements and to grant the prayer of plaintiff's bill would be to permit plaintiff to engage in a general examination of the books, records and docu-

ments which defendant may or may not possess, in a manner which would be too indefinite for a court to control and which would, no doubt, lend to a mere fishing expedition. Such procedure would simply give an opportunity to a plaintiff to examine all of defendant trustee's records with a hope of finding something pertinent or material to plaintiff's case. Equity has repeatedly refused to lend its aid to such an intrusion of defendant's rights and goes beyond any purpose of discovery.

## Conclusions of law

1. This court has jurisdiction over the parties and also over the subject matter involved.

2. The information which plaintiff seeks is not designated with sufficient precision to permit the court to grant discovery.

3. The documents, books and records which plaintiff seeks to examine have not been shown to be in existence and in the possession of defendants.

4. It has not been shown that the information which plaintiff seeks is in the exclusive possession of defendant.

5. The information sought by plaintiff has not been shown to be material and pertinent for preparation of pleadings in the actions at law.

6. Plaintiff's request for discovery is too general to be allowed and at the same time too indefinite to be enforced.

7. Plaintiff's bill for discovery in aid of pleadings must be dismissed.

## Decree nisi

And now, to wit, June 29, 1948, it is ordered, adjudged and decreed that plaintiff's bill for discovery in aid of pleadings be dismissed. Costs to be paid by plaintiff.

The prothonotary is hereby directed to enter this decree nisi and give notice to the parties, or their counsel of record, of the entry thereof, sec. reg.