## Cole, Appellant, *v.* Wells.

Argued November 20, 1961. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and ALPERN, JJ.

reargument refused February 5, 1962.

*Miles Warner,* with him *Robert J. Flint,* for appellant.

*S. Dale Furst, Jr.,* with him *James S. Berger, Elton F. Carlson,* and *Furst, McCormick, Muir, Lynn & Reeder,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, January 2, 1962:

This is an appeal from a decree of the Court of Common Pleas of Potter County which dismissed a complaint in equity seeking discovery from the executor of a decedent's estate "of all facts and circumstances having to do with the execution of the instrument [decedent's last will] offered for probate".

Charles Cole, 84 years of age, died on February 25, 1961 in Coudersport survived by his wife, Edith P. Cole, to whom he had been married in 1958, and two nephews, Frederick Cole (the appellant) and his brother, John Cole. It is estimated that the value of decedent's estate is $9,000,000. On March 4, 1961, Walter P. Wells, [appellee],[1] as executor under the alleged will, offered for probate to the Register of Wills of Potter County a four page instrument bearing date "this [2] day of October, 1958", the backer of which instrument bore the names "Hornburg, Andrews & Diggs", and had thereon the date August 13, 1953. The signature indicated the will had been signed during decedent's last illness. Under this will, inter alia, decedent's two nephews are each given a pecuniary legacy of $10,000 and a trust of the entire residuary estate created whereunder the widow receives a life interest and, upon the widow's death, the entire residuary estate is to be devoted to the erection and endowment of a memorial hospital. This instrument was probated as decedent's last will and letters testamentary[3] were issued to appellee. *No appeal from this probate has been taken.*

---

[1] Walter P. Wells is now and for ten years has been the President Judge and only judge of the courts in Potter County. He disqualified himself and Judge Abraham H. Lipez was assigned by this Court to preside in this proceeding.

[2] A blank appeared in the date.

[3] Appellee and the widow were named under the will as executors and trustees. The widow renounced her rights as executrix in favor of the appellee.

On May 17, 1961, appellant[4] caused a summons in equity to be issued in the Court of Common Pleas of Potter County. Six weeks later, having been ruled to do so by appellee, appellant filed a complaint in equity.[5] To this complaint appellee filed preliminary objections raising the following questions: (1) that there is no possible action at law or equity which forms the basis for a complaint in the form filed so that the complaint does not conform to any law or rule of court; (2) that the complaint is so permeated with surplusage and scandalous and impertinent matter that such surplusage and matter cannot be separated from the matter which is pertinent and relevant; (3) in the absence of an allegation of any cause of action in support of which discovery is sought, discovery will not lie; (4) in the absence of an allegation of any infringement of rights by appellee, discovery—a collateral right to assist in the determination of other rights,—will not lie. The court below entered a decree dismissing the complaint and from that decree this appeal has been taken. The rationale of the opinion of the court below is that appellant is trying to use discovery in the Common Pleas Court to garner information for a will contest and that appellant has "ample remedies in the Orphans' Court should its jurisdiction be properly invoked".

The complaint consists of 27 paragraphs and attached to the complaint are 7 exhibits, 5 of which are items of correspondence between appellant, appellee or appellee's counsel and 2 of which relate to the notice

---

[4] Appellant, a nephew, alleges that in 1948 he and his family resided in California, that decedent requested that appellant and his family move to Coudersport and assured appellant that he and his family would be generously provided for in his will, that they did move to Coudersport and from that time until decedent's death cared for him.

[5] In the meantime, appellant had filed notice of certain pretrial depositions to be taken of various persons, including appellee.

for and a schedule of taking of depositions. The first 9 paragraphs relate in detail much of the factual background previously set forth in this opinion: paragraph 10 avers that the will is irregular on its face in that the backer bears the date "August 13, 1953", the end of the will bears the blank date "this ___ day of October, [1958]" and the signature indicates it was affixed during decedent's last illness (February, 1961).

Paragraphs 11-14, inclusive, relate an interview between John Cole and appellee in February 1961 together with a letter (Exhibit A) from appellee to John Cole subsequent to such interview; two interviews in April 1961 between appellant's counsel and appellee, each interview followed by a letter from said counsel to appellee purporting to set forth what took place at each interview (Exhibits B, C) and a letter (Exhibit D) from appellee to appellant's counsel dated May 22, 1961. By reason of that which took place at these interviews, together with appellee's letter of May 22, 1961, appellant charges that appellee, who drew the will, withheld deliberately the fact that appellee had drawn the will and the fact that, during decedent's last illness, appellee had drawn a power of attorney from decedent to decedent's wife, and that appellee had refused to permit an inspection of not only the power of attorney but also several of decedent's insurance policies. As appellant avers the ". . . variances [illustrated by what took place at the interviews and what appellee stated in his letter of May 22, 1961] bear on the circumstances" of (1) the execution of the will, (2) the decedent's testamentary capacity, (3) the present whereabouts of decedent's prior will or wills, and (4) whether the will was executed within 30 days of decedent's death.

Paragraph 15 avers that appellant's counsel concluded that the "circumstances suggested" that appellee had exerted undue influence in the execution of the will, that decedent lacked testamentary capacity and that the

will was executed during decedent's last illness and that in "the light of this conclusion" appellant instituted this action. According to the averments of this paragraph, the "initial purpose" of this action is: (a) to compel the disclosure of facts by appellee and certain other witnesses; (b) on discovery of such facts, to file an amended complaint setting forth such right of action as the facts show to exist; (c) to safeguard, by injunctive relief, documents, and other instruments; (d) to enjoin appellee from using his judicial office as a means of interference with witnesses; (e) to enforce appellee's duty of disclosure as executor.

Paragraphs 16-24, inclusive, relate that appellant, under Rule 4007, Pa. R.C.P., had served notice on appellee and eight other witnesses for taking their depositions; that, thereafter, a conference took place between appellee, his counsel, appellant's counsel and counsel for decedent's widow and, as a result thereof, the time of taking depositions was continued to dates suggested by appellee and notice thereof was duly given; that later appellee notified appellant's counsel he would not be present for the taking of depositions; of the seven other witnesses subpoenaed, only three witnesses appeared. It is then charged "that the [appellee] had taken affirmative measures to counsel and procure their [the four witnesses'] absence . . ."

Paragraph 25 avers that, unless appellant is quickly given the right to take depositions of appellee and these four witnesses, appellant "apprehends" that appellee will use his influence to confuse their recollection, to make them less available and will hinder by other means the taking of depositions. Paragraph 26 avers that appellant "apprehends" that appellee "intends to subvert and destroy" the utility of taking depositions by "inducing" the court "to sanction an irregular procedure under which the Court will sit *ad hoc* to make advisory rulings on matters of discovery while deposi-

tions are actually under way". Paragraph 27 avers that appellant's remedies at law are inadequate, that he intends to take the depositions of another group of witnesses and that appellee's attempt to hinder the right of discovery may result in irreparable damage to appellant.

The relief sought in this complaint is: (1) that appellee be enjoined from interfering with appellant's right of discovery; (2) that appellee be enjoined from "advising, counselling and procuring . . . witnesses . . . to disobey" the process of the court and not to appear for depositions; (3) that appellee be ordered to safeguard "all documents, instruments, papers, wills and other things, in his possession" having to do with the "person, property or estate" of decedent; (4) that appellee be ordered *as executor* to make a "full and frank disclosure" of all facts *"having to do with the execution"* of the will.

The charges contained in this complaint directed to any person would be grave; when directed against one occupying a judicial position they are doubly grave. However, the gravity of such charges does not vest a court with jurisdiction to hear the charges if jurisdiction does not exist. Our problem is to ascertain whether the court below was correct in its conclusion that it did not have jurisdiction.

To a suitor seeking discovery two methods are open: either under the Act of 1836, as extended,[6] or under Rule 4001 et seq. of Pa. R.C.P. It is far from clear on this record which method appellant has chosen. The Act of 1836 (Section 13), as extended, grants the power and jurisdiction of courts of chancery to courts of common pleas over: "III. The discovery of facts *material to a just determination of issues,* and other ques-

---

[6] Act of June 16, 1836, P.L. 784 (17 PS §282), as extended by the Act of February 14, 1857, P.L. 39, §1 (17 PS §283). It is to be noted that Rule 4023 did not suspend the Act of 1836.

tions *arising or depending in the said courts*: (Emphasis supplied) In *O'Brien v. O'Brien*, 362 Pa. 66, 70, 66 A. 2d 309, Mr. Justice (later Chief Justice) STERN stated: "It is axiomatic that a bill for discovery in aid of an action or defense at law cannot be maintained if the action or the defense itself cannot be maintained; this is because *a bill for discovery . . . is wholly an ancillary proceeding,* and if the asserted claim is itself invalid a bill for discovery in support of it must necessarily fall on demurrer: [citing cases]." (Emphasis supplied) See also: *Peoples City Bank v. John Hancock Mutual Life Ins. Co.*, 353 Pa. 123, 130, 131, 44 A. 2d 514; *Holland v. Hallahan*, 211 Pa. 223, 226, 60 A. 735; *Liegey v. Clearfield Textile Co.*, 149 Pa. Superior Ct. 433, 437, 438, 27 A. 2d 545; *Erb Estate,* 11 Fiduc. Rep. 630. It is clear beyond doubt that the equitable power of a court of common pleas should not be exercised, under the Act of 1836, supra, in aid of discovery unless there is an action brought and pending. Absent such action brought and pending, discovery cannot be had. Pa. R.C.P. 4001(a) also makes evident that depositions can be taken only in connection with a pending action: "The rules of this chapter apply to any civil action or proceeding at law or in equity *brought* in or appealed to any court which is subject to these rules." (Emphasis supplied)

Is there a pending action in the case at bar? The only action brought is the present equity suit which is an action to enforce the right of discovery and not an action to enforce any other right of appellant. Appellant argues that, once the facts are known, he may have either of two actions at law: (1) an action at law against appellee on the ground that he exerted undue influence on decedent either to make this will or not to change this will which deprived appellant of the right to a substantial inheritance (*Mangold v. Neuman,* 371 Pa. 496, 91 A. 2d 904; *Marshall v. DeHaven,* 209

Pa. 187, 58 A. 141), or (2) an action at law to enforce a contract made between decedent and appellant that the former would provide for the latter generously in his will if the latter would remove to Coudersport and care for him. Furthermore, appellant can attack the validity of the will in the Orphans' Court or challenge in the same court the validity of the gift to the hospital. While all these actions are possibilities the fact remains that none has been instituted and none are pending. It is no answer that appellant does not know which, if any, to institute; action could be started and, if for the preparation of the pleadings, knowledge of more facts became necessary, then discovery could be had. Particularly apropos to what appellant is attempting to do is the language of this Court in *Elk Brewing Co. v. Neubert,* 213 Pa. 171, 176, 62 A. 782: "It is not open to doubt, however, that if discovery is used as a mere pretense to give jurisdiction, it would be a gross abuse to entertain a suit in equity when the whole foundation upon which it rests is either disproved or is shown to be a colorable disguise for the purpose of changing the forum of litigation . . ."

In the present posture of this controversy discovery cannot be had.

An examination of the complaint clearly reveals the ultimate purpose of appellant to be the institution of a will contest in the Orphans' Court. Paragraph 15 makes this crystal clear. It avers that as "a result of facts developed by investigation", appellant's counsel concluded "that the circumstances suggested" undue influence and lack of testamentary capacity and the likelihood that the will was executed during decedent's last illness. Then it is averred that "[i]n the light of this conclusion", the present action was instituted.

As the court below stated: "Actually what the plaintiff here appears to be trying to do is to use discovery in Common Pleas to garner information for a

will contest. His allegations charging undue influence, lack of testamentary capacity, execution during thirty (30) days before death, and his wide and scattershot claims for discovery (or as he says in the concluding sentence of Paragraph 24-A of the Amended Complaint, 'and all other facts and circumstances bearing on or affecting the validity of the testamentary disposition offered for probate on or about March 4, 1961') can have but one connotation—that he is trying in every conceivable way to unearth information for a will contest.

" 'The orphans' court has exclusive jurisdiction over the settlement, administration and distribution of a decedent's estate.' Thomas v. Johnston, 356 Pa. 570, 'The Register of Wills Act of 1917 . . . confers jurisdiction upon the register to probate wills. The Orphans' Court Act of 1917 . . . grants jurisdiction to the orphans' court in all appeals from the orders and decrees of the register. The remedy and method of procedure relating to probate and contest of wills being prescribed by these statutes, their provisions must be strictly pursued and exclusively applied (citing cases) . . .' Sheerin v. Beattie, 365 Pa. 510. 'The court of common pleas even as a court of equity, cannot interfere in a matter within the exclusive jurisdiction of the orphans' court.' Trout v. Lukey, 402 Pa. 123. Even though the jurisdictional question is not raised by the preliminary objections, we are required to consider it. Trout v. Lukey, supra; Patterson's Estate, 341 Pa. 177.

"It would indeed be an anomaly to allow discovery in a court which is without jurisdiction to hear the issues towards which such discovery is directed and in a proceeding which is ancillary in nature. Neither logic, nor an understanding of the procedure and nature of probate proceedings and will contests would sustain such an irregular proceeding. The decree of probate by the Register of Wills constitutes a judicial decree in

rem, which is conclusive upon all the world, and is not subject to collateral attack in the Court of Common Pleas, Mangold v. Neuman, 371 Pa. 496. A decree of probate may not be reversed or avoided collaterally in any other court, and is liable only to direct attack by appeal. Hunter Vol. 5, page 170. There are situations, as illustrated in Mangold v. Neuman, supra, which are outside the jurisdiction of a probate or orphans' court, but they are by their nature not an attack on the will itself, and hence, do not constitute an impeachment of the decree of probate. This is clearly not such a case, for the obvious end towards which this proceeding is directed is an attack upon the will itself and matters related thereto.

"The Orphans' Court has 'all legal and equitable powers required for or incidental to the exercise of its jurisdiction,' 20 P.S. Sec. 2080.304. 'The court by general rule or special order, may prescribe the practice relating to depositions, discovery, and, production of the documents. To the extent not provided for by general rule or special order, the practice relating to such matters shall conform to the practice in the local court of common pleas.' 20 P.S. Sec. 2080.742. Rule 6, Sec. 3, O.C.—Supreme Court Rules also so provides. It should be clear, therefore, that plaintiff has ample remedies in the Orphans' Court should its jurisdiction be properly invoked."

The court below wisely and properly dismissed this complaint. Discovery is a valuable right recognized as such by our courts for many years but discovery must not be allowed unless it is sought as a proceeding ancillary to a pending action and in the appropriate forum.

Decree affirmed. Costs on appellant.