CHARLES SHAID OF PENNSYLVANIA, INC., Plaintiff,

v.

The GEORGE HYMAN CONSTRUCTION CO., Defendant.

Civil Action No. 92–3654.

United States District Court, E.D. Pennsylvania.

Nov. 13, 1996.

Jeffrey A. Less, Paul B. Bech, Bazelon & Less, Philadelphia, PA, for Charles Shaid of Pennsylvania, Inc.

Charles Shaid of Pennsylvania, Inc., Clarksboro, NJ, Pro Se.

Kara M. Bruge–Holland, James J. McHugh, Mason Avrigian, Joyce K. Hackenbrach, Kenneth M. Cushman, Pepper, Hamilton & Scheetz, Michael C. Athay, Philadelphia, PA, for The George Hyman Construction Co.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

This is a diversity case under Pennsylvania law. Plaintiff Charles Shaid of Pennsylvania, Inc. ("Shaid"), is a commercial painting sub-

contractor. Defendant the George Hyman Construction Co. ("Hyman"), is a commercial general contractor. Shaid and Hyman entered into a contract pursuant to which Shaid, as a subcontractor, was to perform painting work for Hyman, as a general contractor, at 30th Street Station in Philadelphia, Pennsylvania. In the complaint, Shaid alleged that Hyman had not paid certain of the sums due Shaid for work it performed under the contract. Shaid also claimed that, as a result of tortious attempts by Hyman at the extortion of Shaid, Shaid was required to perform substantial additional work not contemplated under the contract without compensation. Shaid contended that it was entitled to compensatory damages for breach of contract and for prima facie tort and to punitive damages under the prima facie tort theory.

The case was tried to a jury, which rendered a verdict in Shaid's favor on both its contract and tort claims, awarding Shaid compensatory damages in the amount of $898,493 plus interest of $296,505 and punitive damages for the commission of the prima facie tort in the amount of $2,500,000. Currently before the Court is Hyman's post trial motion for judgment as a matter of law or for a new trial.

For the reasons stated herein, the Court finds that prima facie tort has not been recognized as a form of action in Pennsylvania. Furthermore, the Court predicts that if presented with a prima facie tort claim, the Pennsylvania Supreme Court would not adopt prima facie tort as the law of Pennsylvania, at least in circumstances involving parties to a contract where the injury claimed consists entirely of economic damages arising out of the performance of the contract and the injured party is made whole under the contract. Therefore, defendant's motion for judgment as a matter of law on plaintiff's prima facie tort claim will be granted and the jury's punitive damage award will be vacated. In all other respects the verdict and the award of compensatory damages will stand. Finally, defendant's motion for a new trial will be denied.

## I.

In November 1988, Hyman entered into a prime contract with 30th Street Limited, L.P. to act as the general contractor for a project involving the renovation of Philadelphia's 30th Street Station. In turn, Hyman entered into a subcontract with Shaid under which Shaid, as a subcontractor, agreed to perform certain painting and wall covering work on the project as detailed in specification sections 09900 (painting), 09950 (wall covering), and 02513 (paint parking lot stripes), in return for approximately $700,-000. Shaid began work on the project in January 1989.

At trial, Shaid claimed that as a result of the actions of Hyman, Shaid was forced to spend about three times as much time and to expend about three times as much money on the project than the original subcontract called for. Shaid contended that Hyman ordered it to perform work outside the scope of their original agreement, including work allegedly provided for under specification 05710 (ornamental metal and steel window restoration), without providing Shaid with additional compensation. Shaid also contended that Hyman deliberately interfered with Shaid's performance of its work, ordered Shaid to reperform work it had already completed adequately and improperly coerced Shaid into signing documents relating to its subcontract with Hyman which were not in Shaid's best interest.

According to Shaid, by the time its work on the 30th Street Station project was complete in the spring of 1992, Hyman had ordered Shaid to perform work which materially altered what the subcontract had originally contemplated and increased the subcontract amount to approximately $2,500,000.

In addition to its contract claim, Shaid sought damages from Hyman under a theory of prima facie tort. The basis for Shaid's prima facie tort claim was that Hyman's Project Coordinator, Jim Singer, had attempted to extort money from Shaid, proposing to Shaid that if Shaid invested in the electrical contracting business owned by Singer's father, Shaid would have an easier time on the 30th Street Station Project. According to Shaid, the implication was that if

Shaid did not comply, Singer would retaliate. Shaid argued that Hyman was liable for Singer's actions because although Hyman had notice of Singer's extortion attempts, it failed to take any action to stop them and, instead, benefitted from Singer's wrongful insistence that Shaid perform extra work at its own cost. Shaid sought the same damages under its prima facie tort claim as it did under its breach of contract claim.[1]

The case was submitted to the jury. The jury returned a verdict in Shaid's favor on both its breach of contract and prima facie tort claims, awarding Shaid $898,493 in compensatory damages (plus interest of $296,505) and $2,500,000 in punitive damages. The Court then entered judgment in Shaid's favor in the amount of $3,694,998. (*See* doc. no. 142)

## II.

At the close of all the evidence, Hyman moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) arguing that prima facie tort is not a valid cause of action under Pennsylvania law. The Court submitted the case to the jury without ruling on Hyman's motion. Hyman now renews its motion for judgment as a matter of law, and, in the alternative, requests a new trial. *See* Fed.R.Civ.P. 50(b), 59(a). The Court will consider Hyman's challenge to the legal sufficiency of Shaid's prima facie tort claim as a motion to dismiss for failure to state a claim made at trial. *See Moodie v. Federal Reserve Bank of New York*, 861 F.Supp. 10, 13 (S.D.N.Y.1994) (quoting Fed.R.Civ.P. 12(h)(2) & citing 5A Wright and Miller, *Federal Practice and Procedure* § 1392 at 759–60 (1990)) (a motion

for failure to state a claim may be made as late as " 'at trial on the merits' "), *aff'd,* 58 F.3d 879 (2d Cir.1995).

## III.

### A.

■ Shaid's claim to tort damages is grounded upon the argument that section 870 of the Restatement (Second) of Torts has been adopted as the law in Pennsylvania. (*See* Pl.'s Br. Opp'n to Def.'s Mot. for J. as Matter of Law, doc. no. 172 at 3–34) Section 870 of the Restatement (Second) of Torts provides as follows:

> One who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances. This liability may be imposed although the actor's conduct does not come within a traditional category of tort liability.

Restatement (Second) of Torts § 870 (1979). According to the Restatement (Second), section 870 is intended "to serve as a guide for determining when liability should be imposed for harm that was intentionally inflicted, even though the conduct does not come within the requirements of one of the well established and named intentional torts." *Id.* at § 870 cmt. a. The principle of tort liability embodied by section 870 is most widely know as the doctrine of prima facie tort or sometimes simply as intentional tort.[2]

The prima facie tort doctrine carries an honorable pedigree. Its roots can be traced

---

1. Before the case went to the jury, the parties agreed that the measure of damages on Shaid's contract and tort claims was identical. (*See* Trial Transcript Day XIV, doc. no. 165 at 14–13 through 14–16) As Shaid stated on the record We're willing to concede that apart from punitive damages, we don't seek any different measure of damages under the contract or tort theory and I so say that and concede that on the record. And that's why I thought your Honor's suggestion of a verdict line for liability on contract, a verdict line for liability on tort and then the single verdict line damages, really resolved the problem of compensatory damages. Punitive damages is totally different.

(*Id.* at 14–14).

2. The New York Court of Appeals' 1946 decision in *Advance Music Corp. v. American Tobacco Co.,* 296 N.Y. 79, 70 N.E.2d 401 (1946), has been credited as the source of the term "prima facie tort." *See* Kenneth J. Vandevelde, *The Modern Prima Facie Tort Doctrine,* 79 Ky.L.J. 519, 524 & n. 26 (1990/1991). The term was derived from Justice Holmes' statement of the doctrine in *Aikens v. Wisconsin,* 195 U.S. 194, 25 S.Ct. 3, 49 L.Ed. 154 (1904), discussed *infra* note 5. *See* Vandevelde, 79 Ky.L.J. at 524 n. 26; *see also Advance Music,* 296 N.Y. at 84, 70 N.E.2d at 403.

back at least to the late nineteenth century and the seminal pronouncements of Sir Frederick Pollock[3] and later Supreme Court Justice Oliver Wendell Holmes.[4] *See* Kenneth J. Vandevelde, *A History of Prima Facie Tort: The Origins of a General Theory of Intentional Tort*, 19 Hofstra L.Rev. 447 (1990). Under Holmes' general formulation, all liability for intentional harm rested upon the principle that the intentional infliction of injury upon another without justification is actionable.[5]

Holmes' idea of a general theory of intentional tort germinated and, to varying degrees, ultimately found its way into the common law of various states and the Restatement of Torts.[6] *See* James P. Bieg, *Prima Facie Tort Comes to New Mexico: A Summary of Prima Facie Tort Law*, 21 N.M.L.Rev. 327 (1991).

According to the Restatement (Second), the prima facie tort doctrine "does not attempt to establish precise and inflexible requirements [for liability]. Instead, it lays down general guidelines and uses words expressing standards that vary with the circumstances to which they are applied. It is stating a general principle rather than setting forth specific rules." Restatement (Second) of Torts § 870 cmt. a. (1979). Thus, the Restatement (Second) formulation permits the prima facie tort doctrine to serve as the basis of liability for all intentional conduct, whether or not actionable under other tort

**3.** Sir Frederick Pollock was a friend of Holmes who, like Holmes, was interested in developing a general theory of intentional tort. *See* Vandevelde, 19 Hofstra L.Rev. at 450–71.

**4.** Development of the prima facie tort doctrine occurred amidst the movement of the legal system from the traditional common law tort actions, such as "trespass" and "case," to the modern system of tort law. *See* Kenneth J. Vandevelde, *A History of Prima Facie Tort: The Origins of a General Theory of Intentional Tort*, 19 Hofstra L.Rev. 447, 450–71 (1990). Unlike the common law tort scheme, which focused almost entirely on strict liability, under the new tort theories emerging in the latter half of the nineteenth century, intent became an important consideration in determining tort liability. *Id.* In his landmark survey, *The Common Law*, Holmes conceived of a tripartite division of tort law into causes of action based on (1) intentional conduct; (2) negligence; and (3) strict liability. *See* Oliver W. Holmes, Jr., *The Common Law*, (1881). In 1934, the American Law Institute adopted Holmes' three-part scheme for use in the Restatement of the Law of Torts. *See* Vandevelde, 19 Hofstra L.Rev. at 468.

**5.** As Holmes stated writing for the Supreme Court, "prima facie, the intentional infliction of temporal damages is a cause of action, which, as a matter of substantive law, whatever may be the form of pleading, requires a justification if the defendant is to escape." *Aikens v. Wisconsin*, 195 U.S. at 204, 25 S.Ct. at 5 (citing *Mogul Steamship Co. v. McGregor, Gow & Co.*, 23 Q.B.D. 598, 613 (1889)) ("Now intentionally to do that which is calculated in the ordinary course of events to damage, and which does, in fact, damage another in that other person's property or trade, is actionable if done without just cause or excuse") (Bowen, L.J.), *aff'd*, A.C. 25 (1892). One commentator has posited a possible motive on Holmes' part:

As proposed by Holmes, the doctrine of prima facie tort did not necessarily expand liability and actually had the potential to contract it. Holmes saw prima facie tort not merely as another intentional tort, but as the general principle upon which rested all liability for intentional harm. By an expansive view of justification, Holmes could immunize from liability conduct which might otherwise have been liable under another tort theory.

While the general theory of negligence had developed to shield commercial enterprises from liability for unintentional physical injury, Holmes sought to use his general theory of intentional tort to shield workers from liability for economic injury deliberately inflicted in advancing the cause of labor. In Holmes' view, peaceful labor strikes were justifiable conduct and thus not actionable even if they did result in intentionally inflicted injury.

Vandevelde, 19 Hofstra L.Rev. at 449 (footnotes omitted).

**6.** Today, two strands of the prima facie tort doctrine, each quite distinct, have emerged, one propounded by the New York courts, and the other articulated most authoritatively by the Restatement (Second). *See* Vandevelde, 19 Hofstra L.Rev. at 450. Under the New York formulation, prima facie tort serves not as a general theory of tort liability as Holmes envisioned, but rather as a specific tort with its own particular elements that is actionable only when the culpable conduct does not fall within a traditional tort. *See Id.* at 487–92; *see also Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 142–43, 480 N.E.2d 349, 354–55, 490 N.Y.S.2d 735, 741 (1985) (prima facie tort consists of "(1) the intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts which would otherwise be lawful").

theories. *See* Vandevelde, 19 Hofstra L.Rev. at 492–94.

To recover under a theory of prima facie tort as formulated by the Restatement (Second), a plaintiff must establish that the defendant committed an intentional act which was "unjustifiable" and "culpable" and which injured "a legally protected interest of the plaintiff." Restatement (Second) of Torts § 870 cmt. e. (1979). In determining whether conduct is actionable under a prima facie tort theory, the Court must consider "(1) the nature and seriousness of the harm to the injured party, (2) the nature and significance of the interests promoted by the actor's conduct, (3) the character of the means used by the actor and (4) the actor's motive." *Id.*

### B.

■ In the present case, the Court instructed the jury on the law of prima facie tort based on the formulation of the doctrine in the Restatement (Second).[7] Because the parties had stipulated that the damages for the tortious conduct alleged were identical to those alleged for the breach of contract, the only damages awarded for commission of the prima facie tort not compensated under the breach of contract claim were punitive damages.[8]

### (1)

Based upon the decisions in *Mangold v. Neuman*, 371 Pa. 496, 91 A.2d 904 (1952) and *Ken J. Pezrow Corp. v. Karabasz*, No. 95–1239, slip op., 72 F.3d 123 (3d Cir.1995), plaintiff argues that the Pennsylvania Supreme Court and the Third Circuit, respectively, have already acknowledged that Pennsylvania recognizes a cause of action for prima facie tort.

In *Mangold*, plaintiffs brought a tort action in the Court of Common Pleas against their aunt and uncle alleging that the pair had wrongfully induced and caused plaintiffs' late grandfather to execute an invalid codicil to his will, which resulted in plaintiffs' disinheritance. *Mangold*, 371 Pa. at 496–97, 91 A.2d at 904–05. In affirming the judgment of the Court of Common Pleas for defendants, the Pennsylvania Supreme Court held that plaintiffs' suit was a collateral impeachment of the decree of probate admitting the will and codicil and, therefore, could not be maintained.

Explaining its holding, the *Mangold* Court noted the "well defined distinction" between an action involving collateral impeachment and "a case where the decree of probate is not attacked, but is admitted to be valid, and the testator has been prevented from modifying or revoking the admittedly valid probated document through physical restraint or fraud to the injury of an intended testamentary beneficiary." *Id.* at 502, 91 A.2d at 904. As an "illuminating example" of the latter, the Court quoted comment b to section 870 of the Restatement of Torts and found the situation described therein "so legally and logically disparate from the case [there] before [it] that [it] merit[ed] no further consideration." *Id.*, 91 A.2d at 904.

Based on *Mangold's* exemplary reference to section 870, plaintiff argues that the Pennsylvania Supreme Court has "expressly recognized the intentional tort doctrine under § 870." (*See* Pl.'s Br. Opp'n to Def.'s Mot. for J. as Matter of Law, doc. no. 172 at 6–8) Plaintiff's argument is without merit.

It is clear that *Mangold* did not adopt section 870. *Mangold's* sole reference to

---

7. The Court's instruction was consistent with the principles of the Restatement (Second). Hyman does not challenge the language of the Court's instruction.

8. Under Pennsylvania law, punitive damages are not recoverable in a breach of contract action. *See AM/PM Franchise Ass'n v. Atlantic Richfield Co.*, 526 Pa. 110, 132, 584 A.2d 915, 927 (1990) (in case in which court dismissed plaintiffs' tort claims and stated that the case should be decided on contract principles, the court held, "we do not believe that our case law or the Uniform

Commercial Code authorizes a legitimate claim for exemplary damages"); *Western Essex Corp. v. Casio, Inc.*, 674 F.Supp. 8, 9 (W.D.Pa.1987) ("In Pennsylvania, punitive damages are ordinarily not recoverable on breach of contract claims. It is only where the defendant's conduct gives rise to an *independent* tort claim that punitive damages may be available"). Therefore, if Hyman is granted judgment as a matter of law on Shaid's tort claim, the jury's punitive damage award must be vacated. Shaid does not contend otherwise.

section 870 was just what the *Mangold* Court said it was, "an illuminating example" of a case "legally and logically disparate" from the case before it.[9] In fact, in the forty-four years since it was decided, *Mangold* has never been cited by the Pennsylvania Supreme Court or any other court for the proposition espoused by plaintiff.[10]

Plaintiff's contention that "[t]he Third Circuit recognized § 870 as the law of Pennsylvania in the *Karabasz* decision," is similarly unavailing. (*See* Pl.'s Br. Opp'n to Def.'s Mot. for J. as Matter of Law, doc. no. 172 at 11–15)

In *Karabasz*, the plaintiff corporation, filed suit against defendants to recover damages for injuries it sustained defending itself in a prior lawsuit brought by defendants against plaintiff. Plaintiff alleged that the prior suit was commenced without legal or factual justification and was pursued only for the purpose of extorting money from plaintiff. Among plaintiff's claims was one based on prima facie tort.

The district court granted defendants' motion to dismiss plaintiff's prima facie tort claim finding that while "it is possible that the Pennsylvania Supreme Court will recognize a cause of action for intentional tort" it "need make no prediction" because denial of plaintiff's three motions for summary judgment in the prior lawsuit conclusively established that defendants had probable cause to bring the prior lawsuit. *Ken J. Pezrow Corp. v. Karabasz*, 1995 WL 91439 at *6–*11 (E.D.Pa. March 1, 1995), *rev'd*, 72 F.3d 123 (3d Cir.1995). According to the district court, since defendants had established probable cause, the plaintiff's claim failed. *Id.* On appeal, the Third Circuit reversed and remanded the case for further proceedings finding that the district court erred when it equated the trial court's denial of the motion for summary judgment in the prior lawsuit with a *sub silentio* finding that there was probable cause to file the complaint in that case. *Karabasz*, No. 95–1239, slip op. at 1, 12–13.

Shaid contends, "[i]f there was no [prima facie tort] cause of action under Pennsylvania law, the Third Circuit could not have reversed the district court's dismissal of that claim." (Pl.'s Br. Opp'n to Def.'s Mot. for J. as Matter of law, doc. no. 172 at 13–14).

---

**9.** Additionally, it should be noted that the *Mangold* court's reference was not to section 870 of the Restatement (Second), at issue here, but rather to section 870 of the *first* Restatement. Contrary to plaintiff's assertion that "[t]he current version of § 870 is identical in all material respects" to section 870 of the first Restatement, (Pl.'s Br. Opp'n to Def.'s Mot. for J. as Matter of Law, doc. no. 172 at 7–8 n. 4), as one commentator, cited by plaintiff elsewhere in its opposition papers, stated

> Section 870 of the first Restatement was limited to injury intentionally caused by acts which were otherwise tortious. Under the first Restatement, conduct was not judged by whether it was justified, but rather by whether it already had been rendered tortious by other principles of tort law. Section 870, then, did not appear to reflect the powerful capacity of Holmes' version of the prima facie tort doctrine either to broaden or to restrict the scope of conduct which was potentially subject to tort liability.... The second Restatement considerably revamped Section 870, producing a version of the doctrine which differed little in substance from the doctrine formulated by Pollock and Holmes.

Vandevelde, 19 Hofstra L.Rev. at 492–93 (footnotes omitted). Thus, even if the *Mangold* court had expressly recognized a cause of action for prima facie tort under the first Restatement, which it did not, plaintiff's prima facie tort claim would fail as plaintiff has identified no other principle of tort law which would render defendant's actions tortious. (*See* Pl.'s Br. Opp'n to Def.'s Mot. for J. as Matter of Law, doc. no. 172 at 31 ("Moreover, not even Hyman contends that Shaid has another tort cause of action available to it"))

**10.** Plaintiff argues that in *Cole v. Wells*, 406 Pa. 81, 177 A.2d 77 (1962), the Pennsylvania Supreme Court cited *Mangold* for the proposition that Pennsylvania law recognizes "a cause of action for intentional tort outside of probate." (Pl.'s Surreply Br. Opp'n to Def.'s Mot. for J. as Matter of Law, doc. no. 174 at 1–2) The Court finds this argument unpersuasive. *Cole* had nothing to do with prima facie tort, nowhere mentions section 870 and referred to *Mangold* only for the proposition that "[t]here are situations ... which are outside the jurisdiction of a probate or orphans' court, but they are by their nature not an attack on the will itself, and hence, do not constitute an impeachment of the decree of probate." *Cole*, 406 Pa. at 91, 177 A.2d at 81. Contrary to plaintiff's contention, the Court concludes that *Cole* does not provide "recognition that the Pennsylvania Supreme Court would apply § 870 under appropriate facts." (Pl.'s Surreply Br. Opp'n to Def.'s Mot. for J. as Matter of Law, doc. no. 174 at 2)

Therefore, according to Shaid, "[b]y reversing and remanding the case for trial on *all* counts, the Third Circuit necessarily held that the plaintiff had stated a valid cause of action under § 870 [of the Restatement (Second) ]." *Id.* (emphasis in original). The Court disagrees.

As a threshold matter, the *Karabasz* opinion is unpublished. According to the Third Circuit's own rules, unpublished opinions are without precedential value. *See* Internal Operating Procedures of the United States Court of Appeals for the Third Circuit §§ 5.2–5.3 ("An opinion ... is published when it has precedential or institutional value.... An opinion which appears to have value only to the trial court or the parties is ordinarily not published"). Therefore, if the Third Circuit intended *Karabasz* to predict the future course of Pennsylvania law in a novel area, it is unlikely that it would have chosen to leave the opinion unpublished. Alternatively, if the Third Circuit intended *Karabasz* to confirm the existence of a prima facie tort cause of action under Pennsylvania law, it is unlikely that it would have given such a signal without so much as a single citation in the opinion to any state authority recognizing the validity of the prima facie tort.[11]

Moreover, the issue on appeal in *Karabasz* was not the validity of a cause of action for prima facie tort under Pennsylvania law. In fact, the district court in *Karabasz* specifically declined to predict whether or not the Pennsylvania Supreme Court would recognize a cause of action for prima facie tort. *See Karabasz*, 1995 WL 91439 at *7. Rather, as indicated above, the appeal involved whether it was correct for the district court to conclude that in the prior lawsuit between the parties, by refusing to grant summary judgment for the current plaintiff, the state trial court implicitly recognized that the complaint in that lawsuit was based on probable cause.

Finally, contrary to plaintiff's assertions, *Karabasz* was not reversed and remanded "for trial," but rather, was reversed and remanded "for further proceedings consistent with [the] opinion." *Karabasz*, No. 95–1239, slip op. at 13. Therefore, although the Third Circuit ruled that summary judgment in favor of defendants for the reasons relied upon by the district court was inappropriate, on remand, the district court was not enjoined from granting defendants summary judgment on some other ground including the ground that prima facie tort is not recognized as a valid cause of action under Pennsylvania law, a ground specifically not considered by the district court. *See In re Carl M. Mazzocone*, 200 B.R. 568, 572 (E.D.Pa.1996) (" 'the mandate rule applies ... only to those issues that were decided by the appellate court' ") (quoting *Casey v. Planned Parenthood of Southeastern Pa.*, 14 F.3d 848, 857 (3d Cir.), *stay denied*, 510 U.S. 1309, 114 S.Ct. 909, 127 L.Ed.2d 352 (1994) & citing *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 950 (3d Cir.1985) (holding that a trial court is "free to make any order or direction in further progress of the case, not inconsistent with the decision of the appellate court, as to any question not settled by the [appellate] decision")).[12]

---

11. The Third Circuit's opinion in *Karabasz* (1) acknowledges that among plaintiff's claims dismissed by the district court was one for prima facie tort, *Ken J. Pezrow Corp. v. Karabasz*, No. 95–1239, slip op. at 5, 72 F.3d 123 (3d Cir. Nov. 28, 1995); (2) quotes § 870 of the second Restatement in full in a footnote, *id.* at 5 n. 1; and (3) notes that the district court dismissed the plaintiff's prima facie tort claim for the same reason it dismissed plaintiff's other claims, i.e., because it believed that the denials of summary judgment in the prior lawsuit established that defendants had possessed probable cause to bring the prior law suit. *Id.* at 6 & n. 2. No other mention is made of prima facie tort.

12. Among the district court's which have considered the issue, there is no consensus on whether Pennsylvania recognizes a cause of action for prima facie tort. Four district courts have noted that Pennsylvania law does not recognize a cause of action for prima facie tort. *See Elleta Corp. v. Bank of New England, N.A.*, 1990 WL 6101 at *2 (E.D.Pa. Jan. 25, 1990) (Weiner, J.), *aff'd*, 914 F.2d 242 (3d Cir.1990); *Avins v. Moll*, 610 F.Supp. 308, 319 (E.D.Pa.1984) (Cahn, J.), *aff'd*, 774 F.2d 1150 (3d Cir.1985); *Hanenberg v. Borough of Bath*, 1994 WL 388279 at *5 (E.D.Pa. July 27, 1994) (Buckwalter, J.); *Shipkowski v. United States Steel Corp.*, 585 F.Supp. 66, 68 (E.D.Pa.1983) (Kelly, J.). Decisions by two other district courts arguably may be construed to suggest that Pennsylvania recognizes the prima facie tort cause of action. *See L & M Beverage Co. v. Guinness Import Co.*, 1995 WL 771113 (E.D.Pa. Dec. 29, 1995) (DuBois, J.) (while it acknowl-

### (2)

While the Third Circuit and the Pennsylvania Supreme Court have never recognized a cause of action for prima facie tort, neither has either court ever expressly rejected such a claim. Under diversity jurisprudence, since there is no binding precedent, this Court must predict whether, if presented with a prima facie tort claim, the Pennsylvania Supreme Court would recognize prima facie tort as a valid cause of action under Pennsylvania law. *See City of Philadelphia v. Lead Industries Ass'n, Inc.*, 994 F.2d 112, 123 (3d Cir.1993) ("When the state's highest court has not addressed the precise question presented, a federal court [presiding over a diversity case] must predict how the state's highest court would resolve the issue").

This undertaking is daunting and often perilous. (*See* Dolores K. Sloviter, *A Federal Judge Views Diversity Jurisdiction Through the Lens of Federalism*, 78 Va.L.Rev. 1671, 1679–80 (1992) (collecting cases where predictions have gone awry)). As the Third Circuit explained:

> The task of a federal court sitting in diversity is frequently not an easy one, for it must forsake its realm of expertise and assume the aspect of a court of the forum state. Even when applying well-settled law, the federal tribunal must be alert to nuances of precedent.... This endeavor is a perplexing one, but it is not one this court is free to avoid. In the course of discharging our obligation, we must choose either to reject or to accept a nascent legal rule, and thus risk distorting state law as much by an excess of conservatism as by insufficient attention to *stare decisis.*

*Becker v. Interstate Properties*, 569 F.2d 1203, 1204 (3d Cir.1977), *cert. denied*, 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978).

■ A federal court charged with the duty to chart this *terra incognita* must " 'consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue.' " *Nationwide Ins. Co. v. Resseguie*, 980 F.2d 226, 230 (3d Cir. 1992) (quoting *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 663 (3d Cir.), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980) & citing *Safeco Ins. Co. of Am. v. Wetherill*, 622 F.2d 685, 688 (3d Cir. 1980); *Becker*, 569 F.2d at 1205); *see Gares v. Willingboro Township*, 90 F.3d 720, 725 (3d Cir.1996) ("In the absence of guidance from the state's highest court, we are to consider decisions of the state's intermediate appellate courts for assistance in predicting how the state's highest court would rule"); *see also Koppers Co., Inc. v. The Aetna Casualty and Surety Co.*, 98 F.3d 1440, 1444–45, 1453 (3d Cir.1996) (same).

■ This task of prediction is not purely mechanical or ministerial—the Court does not simply add up the authorities on each side of the issue and report the results in a scorecard. Nor is the Court, however, free to craft its own policy preference onto a jurisprudential *tabula rasa.* *See Koppers Co.*, 98 F.3d at 1444–45, 1453. Rather, in predicting the future course of state common law, "a federal court must be sensitive to the doctrinal trends of the state whose law it applies, and the policies which inform the prior adjudications by the state courts." *Clark v. Modern Group Ltd.*, 9 F.3d 321, 327 (3d Cir.1993) (citations and internal quotation marks omitted).

### (a)

Plaintiff contends that "[o]n at least two occasions—*Smith v. Griffiths* and *Pearl As-*

---

edged that "a cause of action for prima facie tort has not yet been recognized in Pennsylvania," the court nonetheless denied defendant's motion for summary judgment on plaintiff's prima facie tort claim because it determined that "the facts alleged, and unchallenged in the Motion, state[d] a viable intentional tort claim under Pennsylvania law"); *Levito v. Hussman Food Service Co.*, 1990 WL 1426 (E.D.Pa. Jan. 8 1990) (Hutton, J.) (on defendant's motion to dismiss plaintiff's claim for "specific intent to cause harm," the

court dismissed the claim due to plaintiff's failure to plead the specific facts necessary to support it—the court did not mention section 870 and the only case cited by the court involved the wrongful termination of employment). Recently, the district court in *Banerjee v. Temple University,* 1996 WL 479662 (E.D.Pa. Aug. 20, 1996) (Bartle, J.) denied the defendants' motion to dismiss the plaintiffs' prima facie tort claim for failure to state a cause of action, but without discussion or citation to authority.

*surance Co. v. National Ins. Agency, Inc.*— the Pennsylvania Superior Court has endorsed the prima facie tort doctrine and its rationale." [13]  (*See* Pl.'s Surrreply Br. Opp'n to Def.'s Mot. for J. as Matter of Law, doc. no. 174 at 4)  Plaintiff misconstrues the import of these state authorities.

*Smith v. Griffiths,* 327 Pa.Super. 418, 476 A.2d 22 (1984), involved an action brought by a husband against the attorney representing his wife in their divorce proceedings. The husband alleged that (1) the attorney had defamed him; and (2) the attorney had injured him by giving his wife incorrect legal advice, i.e., that the attorney had committed a prima facie tort. Defendant filed preliminary objections to the complaint in the nature of a demurrer.[14] The trial court sustained the defendant's objections and the plaintiff appealed.

The issue on appeal was whether a lawyer representing a party in a civil action could be held liable to the opposing party in that action for an intentional tort where the opposing party was injured as a consequence of erroneous advice which the attorney gave his or her client. The Superior Court reviewed the rules of liability for an intentional tort set out in section 870 of the Restatement (Second) and comment e thereto, concluding that "absent an intent to harm a third party by using a client unjustifiably to inflict harm, we will not impose liability upon an attorney for advice which he has given in good faith to a client." *Smith,* 327 Pa.Super. at 428, 476 A.2d at 27.

Plaintiff argues that in *Smith,* the Superior Court "expressly recognized" that section 870 provides a cause of action for prima facie tort in Pennsylvania. (Pl.'s Br. Opp'n to

Def.'s Mot. for J. as Matter of law, doc. no. 172 at 8–11)  Plaintiff reads the *Smith* decision too broadly. Nowhere in *Smith* did the Superior Court say that prima facie tort is a valid cause of action in Pennsylvania. Rather, the court examined, in light of the elements of the tort plaintiff claimed defendant had committed, the elements of a prima facie tort as outlined by section 870 and concluded that the averments of plaintiff's complaint did not satisfy them. *Smith,* 327 Pa.Super. at 427–28, 476 A.2d at 27. At best, *Smith* provides plaintiff with an argument that if prima facie tort was not a cause of action under Pennsylvania law, the Superior Court would simply have affirmed the trial court's judgment.[15]

Even assuming, *arguendo,* that *Smith* recognized a prima facie tort cause of action under certain circumstances, the holding of the case is not applicable to the facts of the instant dispute. In *Smith* the Superior Court only considered the availability of a cause of action for prima facie tort in a narrow factual setting. The Superior Court said so much when it stated that its task was to "examine and define ... the duty, if any, owed by a lawyer to an adverse party to a dispute." *Id.* at 421–22, 476 A.2d at 24. Consistent with this focused approach, the Superior Court surveyed case law, both from Pennsylvania and other jurisdictions, and learned commentary dealing solely with the attorney liability issue. Given the Superior Court's own statement of the issue combined with its strict focus on the rules governing attorney liability and the policy rationale underpinning them, this Court cannot conclude that the Superior Court in *Smith* intended by

---

13. The Pennsylvania Superior Court is one of the state's two intermediate appellate courts.

14. In Pennsylvania state practice, a demurrer is the procedural device by which the court determines the legal sufficiency of a claim. *See* Pa. R.Civ.P. 1028(a)(4). An objection in the nature of a demurrer is analogous to a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Id.;* Fed.R.Civ.P. 12(b)(6).

15. One commentator has cited *Smith v. Griffiths* for the proposition that Pennsylvania is one of a number of states that has recognized the prima

facie tort doctrine. *See* Vandevelde, 79 Ky.L.J. at 526–27 & n. 43. However, Vandevelde does not discuss the basis for his assertions regarding *Smith* or the *Smith* decision itself. Vandevelde also does not specifically consider application of the prima facie tort doctrine under Pennsylvania law. Another commentator apparently disagrees with Vandevelde since the commentator does not classify Pennsylvania as a jurisdiction where prima facie tort has been adopted as a viable cause of action. *See* James P. Bieg, *Prima Facie Tort Comes To New Mexico: A Summary Of Prima Facie Tort Law,* 21 N.M.L.Rev. 327, 347–48 (1991).

implication to impose the web of rules governing attorney liability to all other types of cases where a prima facie tort is alleged.

The decision of the Superior Court in *Pearl Assurance Co. v. National Ins. Agency, Inc.,* 151 Pa.Super. 146, 30 A.2d 333 (1943) is also not helpful to Shaid's cause.

*Pearl Assurance* involved an action for the "unlawful withholding, appropriation, or conversion to their own use, by the defendants ... of premiums actually received by them on certain fire insurance policies which had been intrusted to them by the plaintiff for the purpose of delivery, and to collect the premiums, and pay over the same, less commissions, to the plaintiff." *Pearl Assurance,* 151 Pa.Super. at 148, 30 A.2d at 334. The Superior Court held that the plaintiff could maintain an action in trespass against defendants to recover the premiums paid to them which defendants had converted to their own use.

According to Shaid, because "[l]ike the plaintiff in *Pearl Assurance,* Shaid was injured by intentional wrongful conduct which clearly violated the criminal law [extortion] ... Shaid can sue in tort under Pennsylvania law to recover damages, even though there appears to be no 'named' cause of action directly on point." (Pl.'s Br. Opp'n to Def.'s Mot. for J. as Matter of Law, doc. no. 172 at 22) Again, Shaid's argument proves too much.

First, like *Mangold, Pearl Assurance* has never been cited by any court for the broad proposition that the Pennsylvania Supreme Court has adopted section 870.[16] Second, while, as plaintiff correctly points out, the *Pearl Assurance* court cites to Sir Frederick Pollock's writings on the evolution of tort liability, *see* supra note 3, and Justice Holmes' famous statement of the prima facie tort doctrine in *Aikens, see Pearl Assurance,* 151 Pa.Super. at 151–56, 30 A.2d at 336–37, there is virtually no discussion or analysis of, and certainly no direct reliance on, these writings in the *Pearl Assurance* opinion. In fact, the decision does not even refer to section 870 or prima facie tort.

### (b)

Even assuming that *Smith* and *Pearl Assurance* suggest that section 870 of the Restatement (Second) has been followed by the Superior Court as the law of Pennsylvania, this Court predicts that the Pennsylvania Supreme Court would not endorse such an approach under the circumstances of the present case.

The parties have stipulated that the damages flowing from the breach of contract, i.e., the cost to Shaid of performing the extra work which Shaid neither agreed to perform nor was compensated for under the contract, are identical to those resulting from the commission of the alleged prima facie tort. *See supra* note 1. Thus, it is uncontested that any tort injuries suffered by Shaid are purely economic, incidental to the performance of the contract and fully compensable through recovery on its contract claim. Under these circumstances, the only result imposition of tort liability would accomplish is the unlocking of the door to punitive damage recovery, a door which would otherwise remain closed in an action for breach of contract. *See supra* note 8. The Court predicts that the Pennsylvania Supreme Court would find that several important Pennsylvania public policies caution against this result.

■ First, Pennsylvania courts have been careful not to permit tort recovery by contracting parties for contract breaches. *See Glazer v. Chandler,* 414 Pa. 304, 308, 200 A.2d 416, 418 (1964) (citing *Developments in the Law—Competitive Torts,* 77 Harv.L.Rev. 888, 968 (1964)). This tenet is particularly applicable in a case, such as here, where the injury claimed is purely economic, is fully compensable under the contract claim and does not involve harm to third parties. *See Iron Mountain Sec. Storage Corp. v. Ameri-*

---

**16.** Instead, *Pearl Assurance* has been cited for its discussion of (1) the elements and scope of the tort of conversion, *see, e.g., Baker v. Rangos,* 229 Pa.Super. 333, 348, 324 A.2d 498, 505 (1974); (2) individual versus corporate liability, *see, e.g., Consumers Time Credit, Inc. v. Remark Corp.,* 227

F.Supp. 263, 265–66 (E.D.Pa.1964); or (3) the fact that an individual may be liable for civil damages arising from his or her criminal conduct, *see, e.g., Commonwealth v. Groft,* 424 Pa.Super. 510, 516, 623 A.2d 341, 344–45 (1993).

*can Specialty Foods, Inc.,* 457 F.Supp. 1158 (E.D.Pa.1978).

Second, permitting recovery of punitive damages in a case where the injured party can be made whole through recovery under its contract claim is in tension with Pennsylvania jurisprudence barring the award of punitive damages for breach of contract, *see supra* note 8, and refusing to recognize an independent cause of action for punitive damages. *See Hilbert v. Roth,* 395 Pa. 270, 276, 149 A.2d 648, 652 (1959) ("The right to punitive damages is a mere incident to a cause of action—an element which the jury may consider in making its determination—and not the subject of an action in itself"); *see also Emerick v. U.S. Suzuki Motor Corp.,* 750 F.2d 19, 22 (3d Cir.1984) (same).

Third, adopting section 870 of the Restatement (Second) would lead Pennsylvania into uncharted terrain criticized by commentators, *see* Bieg, 21 N.M.L.Rev. at 327 (prima facie tort is a "nebulous concept"); Kenneth J. Vandevelde, *The Modern Prima Facie Tort Doctrine,* 79 Ky.L.J. 519 (1990/1991) (with considerable justification, courts have described the prima facie tort doctrine as a "misty shroud"), and lacking national consensus as to its merits, *see* Bieg, 21 N.M.L.Rev. at 343–49; Vandevelde 79 Ky.L.J. at 525–28.

Nor would the Pennsylvania Supreme Court find the award of punitive damages under these circumstances warranted as a matter of social policy. Even if deterrence and punishment, the twin goals justifying the need for punitive damages in civil actions, *see Kirkbride v. Lisbon Contractors, Inc.,* 521 Pa. 97, 102–03, 555 A.2d 800, 803 (1989), were to be promoted by this expansion of tort liability, these benefits do not outweigh their attendant social cost. *See generally BMW of N. Am. v. Gore,* —— U.S. ——, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) (overturning $2,000,000 punitive damage award as excessive where compensatory damages were $4000 and discussing standards for determining amount of punitive damages). As the Third Circuit recently stated, while compensation of injured parties is a primary objective of tort law, "it is not the only goal of the tort system." *See City of Philadelphia,* 994 F.2d at 126 (declining to predict that the Pennsylvania Supreme Court would adopt the market-share liability theory).

The need for balancing the social benefits and burdens which result from an expansion of tort liability was recently underscored by Pennsylvania Supreme Court Justice Flaherty:

> As it is with everything, a *balance* must be struck—certain limits drawn. We are, in the end, dealing with money, and that money must come from somewhere—from someone: the public pays for the very most part by increased insurance premiums, taxation, prices paid for consumer goods, medical services, and in loss of jobs when the manufacturing industry is too adversely affected. A sound and viable tort system—generally what we now have—is a valuable incident of our free society, but we must protect it from excess lest it becomes unworkable and alas, we find it replaced with something far less desirable.

*Id.* (quoting *Mazzagatti v. Everingham by Everingham,* 512 Pa. 266, 281, 516 A.2d 672, 680 (1986) (Flaherty, J., concurring) (emphasis in original)). Pennsylvania appellate courts declining to expand tort liability frequently have quoted this passage. *Id.* (citing *White v. Weiner,* 386 Pa.Super. 111, 562 A.2d 378, 385 (1989) (no duty to warn for entities in distribution chain other than final drug manufacturer), *aff'd,* 525 Pa. 572, 583 A.2d 789 (1991); *Steiner by Steiner v. Bell Tel. Co. of Pa.,* 358 Pa.Super. 505, 517 A.2d 1348, 1357 (1986) (no cause of action for loss of parental consortium), *aff'd,* 518 Pa. 57, 540 A.2d 266 (1988)). The Court predicts that, under these circumstances, the Pennsylvania Supreme Court would conclude that on balance the benefits to be gained by adopting section 870 of the Restatement (Second) do not outweigh the attendant social costs.

### C.

No plaintiff bringing suit under Pennsylvania law has ever recovered under a theory of prima facie tort. No Pennsylvania court or court interpreting Pennsylvania law has ever stated that, in Pennsylvania, prima facie tort is a valid cause of action. After canvassing the authorities and forecasting how the

Pennsylvania Supreme Court would apply Pennsylvania public policy and balance the social utility of adopting section 870 of the Restatement (Second) against the social costs, the Court concludes that if presented with a claim for prima facie tort, the Pennsylvania Supreme Court would not recognize such a cause of action under Pennsylvania law. Therefore, defendant's motion for judgment as a matter of law on plaintiff's prima facie tort claim will be granted.

## IV.

In addition to its motion for judgment as a matter of law on plaintiff's prima facie tort claim, defendant has moved this Court to grant it a new trial on plaintiff's contract cause of action. The Court finds defendant's arguments to be without merit for the reasons set forth on the record at trial.

### A.

▮▮▮ In its new trial motion, Hyman also argues that Shaid's claim of economic duress was unsupported by the weight of the evidence. As the Third Circuit has stated,

to some extent at least, [when the district court grants a motion for a new trial based on the weight of the evidence, the court has] substituted [its] judgment of the facts and the credibility of the witnesses for that of the jury. Such an action effects a denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the prime function of the jury as the trier of facts. It then becomes the duty of the appellate tribunal to exercise a closer degree of scrutiny and supervision than is the case where a new trial is granted because of some undesirable or pernicious influence obtruding into the trial. Accordingly, the district court ought to grant a new trial on the basis that the verdict was against the weight of the evidence only where a miscarriage of justice would result if the verdict were to stand. Where the subject matter of the litigation is simple and within a layman's understanding, the district court is given less freedom to scrutinize the jury's verdict than in a case that deals with complex factual determinations such as passing upon the nature of an alleged newly discovered organic compound in an infringement action. . . . Despite the limited nature of the district court's discretion in granting a new trial because a jury's verdict is against the weight of the evidence, we recognize that considerable deference remains due to that court's determination that a verdict is against the weight of the evidence. The trial judge observes the witnesses and follow[s] the trial in a way that we cannot replicate by reviewing a cold record. Nevertheless, new trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience.

*Klein v. Hollings,* 992 F.2d 1285, 1290 (3d Cir.1993) (quoting *Williamson v. Consolidated Rail Corp.,* 926 F.2d 1344, 1352–53 (3d Cir.1991) (citations and internal quotation marks omitted)).

### B.

▮▮▮ At trial, an issue in controversy was the import of "Change Order 26." Hyman argued that Change Order 26 operated as an accord and satisfaction settling many of Shaid's claims against it. Shaid disagreed, contending that Hyman (1) manufactured the dispute which Change Order 26 was purportedly designed to resolve; (2) forced Shaid into the agreement by exerting improper economic pressure on Shaid; and (3) failed to comply with Change Order 26's terms. The Court charged the jury on the law of both accord and satisfaction and economic duress. (*See* Trial Transcript Day XV, doc. no. 166 at 15–139 through 15–146) Defendant now contends that the Court "committed reversible error in charging the jury on duress [because] there was insufficient evidence to support such a charge." [17] (*See* Reply Mem. Supp.Def.'s Mot.J. Matter of Law, doc. no. 173 at 18) Assuming *arguendo* that there was insufficient evidence in the record to

---

**17.** Defendant does not challenge the language of the Court's economic duress instruction.

warrant charging the jury on economic duress, the Court concludes that Hyman is not entitled to a new trial.

A finding of reversible error in this case first requires acceptance of Hyman's speculation that the jury did not find an accord and satisfaction and, therefore, that the compensatory damages awarded in favor of Shaid did not reflect any offset in sums owed Shaid by Hyman which the accord and satisfaction would have provided. However, as the Court instructed the jury, the terms of Change Order 26 were ambiguous and, therefore, it was up to the jury to determine what the parties intended when they agreed to Change Order 26 and to apply the agreement of the parties to the facts of the case. (*See* Trial Transcript Day XV, doc. no. 166 at 15–142 through 15–143) Simply because the verdict did not reflect the entire amount of the offset Hyman claimed Change Order 26 provided, therefore, does not mean that the jury did not find that Change Order 26 constituted an enforceable accord and satisfaction, albeit one that reduced Shaid's damages by some amount less than that claimed by Hyman.[18]

Additionally, even assuming that the jury found no accord and satisfaction, Hyman's argument presupposes that the jury reached that conclusion because it determined that Shaid agreed to Change Order 26 under economic duress. Such a presupposition is, again, speculative. The Court instructed the jury that for Hyman to show an accord and satisfaction it had to establish that there was (1) a bona fide dispute between the parties

under an existing contract; (2) an enforceable accord entered into; and (3) the satisfaction of Hyman's obligations under the accord. (*See Id.* at 15–140 through 15–142) The Court further charged that if the jury found that Shaid entered into the accord under economic duress, element (2) had not been established and the accord was not enforceable. (*Id.* at 15–142) Pursuant to the Court's charge, therefore, if the jury concluded, based on the conflicting evidence, that Hyman had failed to establish any one of the three elements described, it would have found no accord and satisfaction.

Hyman postulates that although the jury found that Hyman had established elements (1) and (3), it found Hyman had not established element (2) because it improperly considered economic duress. Equally as plausible, however, is that the jury, again assuming it found no accord and satisfaction, so found because it concluded that Hyman had not established elements (1) and/or (3).[19]

Therefore, because there was sufficient evidence to support the jury's general verdict that Change Order 26 was either (a) an enforceable accord and satisfaction, albeit one with ramifications not as sweeping as Hyman argued; or (b) not an enforceable accord and satisfaction because Hyman had not established (1) the existence of a bona fide dispute and/or (2) that it had satisfied the obligations called for by the accord, even if it was error for the Court to submit the issue of economic duress to the jury, such error was harmless.[20] Accordingly, because

18. As Hyman concedes, at trial it contended that "*many* of Shaid's claims had already been settled as part of Change Order 26." (*See* Def.'s Mem. Supp.Def.'s Mot. for J. as Matter of Law, doc. no. 170 at 56 (emphasis added)) Therefore, not even Hyman argues that if the jury found Change Order 26 constituted a valid accord and satisfaction, it could not have awarded Shaid *any* damages on its contract claim.

19. The Court notes that Hyman did not object to the jury verdict form, which did not require the jury to answer separate interrogatories on the issues of accord and satisfaction and economic duress. (*See* Trial Transcript Day XV, doc. no. 166 at 15–2 through 15–20)

20. The Third Circuit cases cited by Hyman in support of its contention that the submission to the jury of a factually inadequate theory is re-

versible error per se are inapposite. (*See* Reply Mem.Supp.Def.'s Mot. J. Matter of Law, doc. no. 173 at 18–21) None of the cases involved situations where there was sufficient evidence to support the jury's verdict on other than the challenged ground, as is the case here. *See Smith v. Lauritzen,* 356 F.2d 171 (3d Cir.1966) (reversible error to charge jury on self defense in assault case where there was "not an iota of evidence" to support jury finding that attacker acted in self defense); *Mroz v. Dravo Corp.,* 429 F.2d 1156 (3d Cir.1970) (prejudicial error to charge jury on contributory negligence and its diminishing effect upon any verdict jury might find in favor of plaintiff where there is no evidence from which jury could properly find lack of due care by plaintiff); *Paluch v. Erie Lackawanna R.R. Co.,* 387 F.2d 996 (3d Cir.1968) (same); *Freifield v. Hennessy,* 353 F.2d 97 (3d Cir.1965) (in automo-

a miscarriage of justice will not result if the verdict is left to stand, Hyman's motion for a new trial will be denied.[21]

## V.

The Court having determined that no cause of action for prima facie tort is or would be recognized under Pennsylvania law under the circumstances of this case, defendant's motion for judgment as a matter of law on plaintiff's prima facie tort claim will be granted. The jury's punitive damage award will, therefore, be vacated. Defendant's motion for a new trial will be denied.

An appropriate order shall be entered.

## ORDER

**AND NOW,** this 13th day of **November, 1996,** upon consideration of defendant's motion for judgment as a matter of law or for a new trial (doc. nos. 144 & 170), plaintiff's response thereto (doc. no. 172), defendant's reply (doc. no. 173) and plaintiff's surreply (doc. no. 174), it is hereby **ORDERED** that

1.) Defendant's motion for judgment as a matter of law on plaintiff's prima facie tort claim is **GRANTED;**

2.) The jury's punitive damage award is **VACATED;** and

3.) Defendant's motion for a new trial is **DENIED.**

**AND IT IS SO ORDERED.**

---

bile accident case where defendant claimed accident occurred due to his sudden loss of consciousness, it was prejudicial error for court to instruct jury that defendant should be exonerated from liability if his unconsciousness was "result of an act of God" where, as a matter of law, defendant's medical condition could not be so classified).

**21.** All arguments made by defendant in its present motion which have not been addressed by the Court in this memorandum are rejected. All requests for relief made by defendant not discussed herein are denied.