## STATE AUTO INSURANCE CO., Plaintiff,

### v.

## Eric SUMMY, et. al., Defendants.

### No. Civ.A. 99–1747.

United States District Court,
E.D. Pennsylvania.

Jan. 28, 2000.

---

Summy and Jeffrey Enck, t/a E & J Rentals (the "Insureds"). The policy was in effect from January 1, 1998 to November 13, 1998.

The Insureds were in the real estate business and owned the premises located at 618 N. Plum St., Lancaster, PA 17602. From approximately October 1, 1997 to February 23, 1999, Bryant Dixon, a minor, resided at the Plum St. property. On March 12, 1999, Bryant Dixon, through Shawna Dixon, his legal guardian, filed a complaint in state court against the Insureds seeking to recover for injuries Bryant sustained through ingestion and inhalation of defective lead-based paint.

The Insurer in turn filed this federal action seeking a declaration that it is under no obligation to defend and/or indemnify the Insureds with respect to Bryant Dixon's claim because his injuries occurred through ingestion and inhalation of a pollutant. The Insurer bases its claim upon an exclusion provision in the policy that excludes coverage for:

'Bodily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants ... [a]t or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. . . .

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Insurance Policy, Business Owners Liability Coverage Form, Exclusion (f)(1)(a). *See* Pl.'s Mem., Ex. A.

The Insureds counter by arguing both that lead-based paint is not a "pollutant" and that Bryant Dixon's injuries did not result from a "discharge, dispersal, seepage, migration, release or escape of pollutants."

John C. Sullivan, Post & Schell, Philadelphia, PA, for State Auto Insurance Companies, plaintiff.

William J. Gallagher, Timothy F. Rayne, Mac Elree, Harvey, Gallagher & Featherman, Ltd., West Chester, PA, for Eric Summy, defendant.

Peter R. Kohn, Monheit, Monheit, Silverman & Fodera, P.C., Philadelphia, PA, for Bryant Dixon, Shawna Dixon, defendants.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

## I. BACKGROUND

Plaintiff, State Auto Insurance Co. (the "Insurer"), issued a business owners liability insurance policy (the "policy") to Eric

## II.  LEGAL STANDARD

Summary judgment is appropriate if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Where the movant is the party bearing the burden of proof at trial, it must come forward with evidence entitling it to a directed verdict. *Paramount Aviation Corp. v. Augusta,* 178 F.3d 132, 146 (3d Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 188, 145 L.Ed.2d 158 (1999). When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court must accept the non-movant's version of the facts as true, and resolve conflicts in the non-movant's favor. *See Big Apple BMW, Inc. v. BMW of N. Amer., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied,* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *See Celotex Corp. v. Catrett;* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has done so, however, the non-moving party cannot rest on its pleadings. *See* Fed.R.Civ.P. 56(e). Rather, the non-movant must then "make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file." *Harter v. GAF Corp.,* 967 F.2d 846, 852 (3d Cir.1992); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III.  DISCUSSION

The Insurer argues that the policy's exclusion provision relieves it of any responsibility to indemnify and/or defend a claim against the Insureds based upon Bryant Dixon's injuries because lead-based paint is a pollutant, and Bryant Dixon's injuries resulted from a "discharge [or] dispersal, etc." of a pollutant. In turn, the Insureds argue that the term, "pollutants," in the policy is ambiguous, and therefore, a genuine issue of material fact exists as to whether lead-based paint is a "pollutant" under the policy. In the alternative, the Insureds argue that even if lead-based paint is a "pollutant" under the policy, Bryant Dixon's injuries did not result from a "discharge, dispersal, seepage, migration, release or escape" because the lead particles in the paint did not separate from the paint itself.

■ Under Pennsylvania law, where the terms of an insurance policy are clear and unambiguous, the court should give effect to the plain language of the agreement. *Madison Construction Co. v. Harleysville Mutual Insurance Co.,* 557 Pa. 595, 735 A.2d 100, 106 (1999) (citations omitted). Further, since the Insurer is relying on an exclusion provision, it has the burden of proving its applicability. *Id.*

The Pennsylvania Superior Court recently considered the identical question before the court. In *Lititz Mutual Insurance Co. v. Steely,* —— A.2d ——, 1999 WL 1297456 (1999), a minor, Steven Brown, lived in a rental property owned by the Steelys. "While living in [this] rental propert[y], Steven suffered lead poisoning through the inhalation/ingestion of lead-based paint dust/chips."[1] *Steely,* 1999 WL

---

1. The Dixon's state court complaint similarly states that "plaintiff was caused to be exposed to a hazardous, dangerous, and harmful condition on the painted surfaces of the subject premises, namely defective lead-based paint, which directly and proximately caused plaintiff to become lead poisoned through ingestion and inhalation of same." Complaint, ¶ 5, Pl.'s Mem., Ex. B. The Dixon's complaint further states that plaintiff's bodily injury did not arise out of "the discharge, dispersal, release, escape or migration of pollutants." *Id.* at ¶ 7. This attempt to avoid the policy exclusion is futile. *See Teti v. Huron Insurance Co.,* 914 F.Supp. 1132, 1136 (E.D.Pa. 1996) ("A plaintiff may not dress up a complaint so as to avoid the insurance exclusion.") (*quoting Nationwide Mut. Ins. Co. v.*

1297456, 1999 Pa.Super. LEXIS at *3. Ethel Brown, Steven's mother, brought suit against the Steelys alleging negligence, misrepresentation, and breach of the implied warranty of habitability. *Id.* The Steely's were insured under a policy with an exclusion provision almost identical to the one at issue in this case.[2] The insurer asserted the exclusion as a bar to coverage.[3]

The *Steely* court first found that lead-based paint was unambiguously a "pollutant" under the exclusion provision. *Id.* at *12–14, 1999 WL 1297456. The court also concluded that Steven Brown's lead poisoning unambiguously arose out of a "discharge, dispersal [or] release." *Id.* at *12–14, 1999 WL 1297456. Specifically, the court indicated that the exclusion provision applied to "a pollutant, i.e. lead-based paint, applied to the walls of a residential dwelling, [that] over time exfoliated, abraded, flaked, deteriorated or otherwise moved off the walls as small particles of paint dust." *Id.* at *16, 1999 WL 1297456. Significantly, the court expressly rejected the specific argument made here by the Insureds that the exclusion provision is inapplicable because the lead particles in the lead-based paint never actually separate from the paint itself. *See id.* at *13, 1999 WL 1297456 (indicating that the Pennsylvania Supreme Court had rejected this approach in *Madison* ).

In a diversity case, a district court is, of course, bound to apply state substantive law as interpreted by the state's highest court. Since in this case the state's highest court has not addressed the precise question before the district court, the court must predict whether, if presented with the language of the exclusion provision and

under similar facts, the Pennsylvania Supreme Court would find the pollution exclusion at issue applicable in this case.

"A federal court charged with the duty to chart this *terra incognita* must 'consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue.'" *Charles Shaid of Pennsylvania, Inc. v. George Hyman Construction Co.*, 947 F.Supp. 844, 852 (E.D.Pa.1996) (citations omitted). "'In the absence of guidance from the state's highest court, we are to consider decisions of the state's intermediate appellate courts for assistance in predicting how the state's highest court would rule.'" *Id.* (citation omitted).

The Pennsylvania Superior Court, in *Steely,* relied upon the Pennsylvania Supreme Court's recent decision in *Madison* as a "road map." *Steely,* 1999 WL 1297456, 1999 Pa.Super. LEXIS at * 6. In *Madison*, the plaintiff, Madison Construction Co. (Madison), was retained to pour and cure concrete at the Boeing/Vertol Helicopters Facility. *Madison*, 735 A.2d at 102. To cure the concrete, Madison used "Euco Floor Coat or Eucocure." *Id.* As Madison cured the concrete, it enclosed the area in an " 'envelope' of polyethylene sheeting." *Id.* Nicholas Ezzi, a Boeing employee, was overcome by fumes emanating from the "Eucocure," lost consciousness and suffered physical injuries. *Id.*

Madison, as the insured, then brought a declaratory judgment action to determine whether it was entitled to coverage under a policy issued by the defendant insurer, Harleysville Mutual Insurance Co. *Id.* The

*Yaeger*, 1994 WL 447405 (E.D.Pa.1994), *aff'd,* 60 F.3d 816 (3d Cir.1995)).

**2.** The policy at issue in *Steely* did not cover "[b]odily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants ... at or from premises owned, rented, or occupied by the named insured." *Id.* at *7, 1999 WL 1297456. The policy further de-

fined "pollutants" to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." *Id.*

**3.** The Insureds concede that *Steely* is factually indistinguishable from this case.

policy issued by the insurer in *Madison* contained an exclusion clause virtually identical to the one at issue in this case. *See id.* at 102–03 (providing language of policy exclusion). The Pennsylvania Supreme Court first found that the policy's definition of "pollutant" unambiguously encompassed "Eucocure," noting that "the specific product at issue is not innocuous; its harmful effects are well known." *Id.* at 107. The court next found that Mr. Ezzi's injuries arose from an "actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants," finding that each of the operative terms clearly implicate a degree of movement. *Id.* at 108–09. The court specifically found this requirement to be present where a pollutant "dispersed into the air and around the [area coated with Eucocure]." *Id.* at 108.

■ The Insureds contend that *Steely*'s reliance on *Madison* is misplaced. First, the Insureds place a great deal of significance on the fact that in *Madison,* fumes arose from the "Eucocure" almost immediately after it was applied, whereas in this case, the lead-based paint did not fall from the walls of the residence for several years. Second, the Insureds argue that while the material in question in *Madison* was clearly "toxic," no reasonable person would regard lead-based paint as equally harmful.[4] The court disagrees.

Initially, the period of time that has elapsed between application of the harmful substance and its deleterious effects is of no moment. The definition of "pollutants" in the policy has no temporal requirement. Nor does the "discharge, dispersal, etc." requirement demand that the "discharge, dispersal, etc." occur within a specified period of time.

Moreover, the Insureds' argument stressing the toxic nature of "Eucocure" likewise overlooks the plain language of the policy. The policy's definition of "pollutants" includes "any solid ... irritant or contaminant...." The crucial question, then, is not whether lead-based paint is equally as dangerous as "Eucocure," but rather whether it is an "irritant or contaminant." In that respect, lead-based paint, like "Eucocure," is not "innocuous," and its harmful effects are also well known.[5]

■ The court further agrees with the *Steely* court's rejection of the argument the Insureds make here that because the lead particles in the paint never actually separate from the lead-based paint itself, no "discharge [or] release" of a pollutant occurred. In *Madison,* the Pennsylvania Supreme Court found that "the element of movement" was common to the terms, "discharge, dispersal, etc." *Madison,* 735 A.2d at 108. The *Madison* court further stated that the exclusion provision "indicates an intent to comprehend all such types and degrees of movement." *Id.* In this case, the pollutant, lead-based paint, clearly moved from the walls of the residence and was ingested and inhaled by Bryant Dixon. Therefore, the "element of movement" required by the exclusion provision has been satisfied.[6]

In short, the court concludes both that the decision in *Steely* represents the correct reading of *Madison* and that it is an accurate predictor of what the Pennsylvania Supreme Court would hold if faced with the instant pollution exclusion clause

---

4. The Insureds first made both of these arguments at oral argument, therefore, neither contention is addressed in the parties' filings.

5. *See Steely,* 1999 Pa.Super LEXIS at *11, 1999 WL 1297456 (noting that regulations in 1978 "banned the use of lead in residential paint" and providing other examples of the well-known effects of lead-based paint).

6. In fact, this case requires less analysis of the type of movement contemplated by the exclusion provision than was required in *Madison.* In *Madison,* the pollutant actually changed forms, from a liquid to a gas, before moving into the air and causing Mr. Ezzi to lose consciousness. In this case, on the other hand, the lead-based paint moved from the walls of the residence without changing forms.

under the facts of this case. Therefore, the court finds that the exclusion provision is unambiguous and that it applies to the circumstances of this case. Further, under the exclusion provision, the court finds that lead-based paint is a pollutant and that the alleged injuries sustained by Bryant Dixon arose out of "the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants."

## IV. CONCLUSION

For the reasons set forth above, the Insurer is under no duty to indemnify and/or defend the Insureds as a result of Bryant Dixon's inhalation and ingestion of lead-based paint particles at the premises located at 618 N. Plum St., Lancaster, PA 17602.[7] Consequently, summary judgment in favor of the Insurer is appropriate.

An appropriate Order follows.

### ORDER

**AND NOW,** this **28th** day of **January, 2000,** upon consideration of plaintiff State Auto Insurance Co.'s Motion For Summary Judgment (doc. no. 18), defendants Eric Summy and Jeffrey Enck t/a E & J Rentals' Response to State Auto's Motion for Summary Judgment and Cross–Motion for Summary Judgment (doc. no. 19), and the Dixon Defendants' Response to Motions for Summary Judgment of State Auto Insurance Companies and E & J Rentals (doc. no. 20), it is hereby **ORDERED** that plaintiff's motion is **GRANTED** and defendants Summy and Enck's motion is **DENIED.**

It is further **ORDERED** that **JUDGMENT** shall be entered in favor of plaintiff and against all defendants and the Clerk shall mark the case **CLOSED.**

**AND IT IS SO ORDERED.**

---

7. At oral argument, the Insureds asked the court to place the case in suspense pending a decision by the Pennsylvania Superior Court on a request for a rehearing en banc and a potential appeal to the Pennsylvania Supreme Court in the *Steely* case. The Insureds' request is based upon mere speculation. This court is in no position to predict whether the Pennsylvania Superior Court will grant reargument, and if so, whether the Pennsylvania Supreme Court will agree to hear this case.